No. 16,401.

COOK ET AL. *v.* BAKER, SECRETARY OF STATE ET AL.
(214 P. [2d] 787)

Decided January 17, 1950.

Mr. HUBERT D. HENRY, Mr. RICHARD D. HALL, for petitioners.

Mr. JOHN W. METZGER, Attorney General, Mr. ALLEN MOORE, Deputy, for respondents.

*En Banc.*

MR. JUSTICE HAYS delivered the opinion, of the court.

THIS is an original proceeding in this court under the provisions of section 1, chapter 147, S. L. '41, and initiated by petition in which it is recited, in substance, that on December 20, 1949, petitioners filed with the secretary of state an original and copy of a petition for a proposed initiative amendment to the state Constitution for the purpose of having fixed by an administrative

board consisting of the secretary of state, attorney general, and reporter of the supreme court, a title and "ballot title and submission clause," as by law provided.

The proposed initiative amendment is as follows:

*"Be It Enacted by the People of the State of Colorado:*

"Section 1. Section 13 of Article XII of the Constitution of the State of Colorado is hereby amended to read as follows:

"Section 13. *State Civil Service.*—Permanent appointments and promotions in the state civil service shall be made according to merit and fitness, to be ascertained by examination, subject to the provisions of Section 14 of this article relating to veterans' preference. Persons in the state civil service shall hold permanent appointments during efficient service and shall be retired according to law.

"The state civil service shall include all permanent appointive positions in the state government, except that positions held by the following persons shall be excluded, to-wit: Officers and employees of the legislative and judicial departments, and persons appointed to perform judicial functions; members of boards, commissions, councils and committees; his administrative staff of secretaries, administrative assistants, stenographers, clerks and messengers, selected by the governor; one deputy and one secretary selected by each elective officer; appointees to fill vacancies in elective offices; officers, teachers and employees of the educational institutions and departments thereof; officers, members and employees of the state militia; heads of administrative departments created pursuant to Section 15 of this article.

"Laws shall be made to enforce the provisions of this section. Existing laws and regulations not in conflict herewith shall continue in effect until changed. All persons holding permanent appointments in the state civil service, as herein defined, when this section takes

effect, shall retain their permanent appointments in accordance with the provisions of this section.

"There shall be a civil service commission of three members, not more than two of whom shall be members of the same political party, appointed by the governor with the consent of the senate for six year overlapping terms expiring January 31st of odd numbered years, and removable by the governor for cause.

"Section 2. Article XII of the Constitution of the State of Colorado is hereby amended by adding thereto a new section reading as follows:

"Section 15. *Administrative Departments and Heads Thereof.*—All permanent executive and administrative offices, departments and instrumentalities of the state government, except the governor, his administrative staff, and the lieutenant governor, and their respective functions, powers and duties, shall be allocated by law among and within not more than 20 administrative departments. The head of each administrative department shall be a single executive who shall be (1) an elective officer of the executive department of the state or, (2) an officer appointed by an elective board, or (3) an officer appointed by the governor with the consent of the senate, and serving during the pleasure of the governor, but subject to the right of the governor, when the senate is not in session, to make a temporary appointment until the next session of the senate, or (4) an officer appointed by an appointive board or commission, with the approval of the governor, and serving during the pleasure of the governor."

On December 28, 1949, two members of the said administrative board, the Supreme Court Reporter being absent, fixed the following title for said initiative amendment, to wit: "An Act To Amend Article XII of the Constitution of the State of Colorado, Relating to the State Civil Service" and also fixed the following ballot title and submission clause, to wit: "An act to amend article XII of the Constitution of the State of

Colorado, (1) by amending section 13 thereof providing for the making of *permanent appointments and promotions in the state civil service according to merit and fitness, to be ascertained by examination, subject to the provisions of section 14 of* said *article;* providing for the holding of *permanent appointments* by persons *in the state civil service during efficient service* and for the retirement of such persons; providing for the inclusion in the state civil service of *all permanent appointive positions in the state government* but for the exclusion therefrom of certain designated persons; providing for the making of laws for the enforcement of said section; providing, until changed, for the continuing effectiveness of *existing laws and regulations not in conflict* with said section; providing for the retention in *their permanent appointments in accordance with the provisions* of said section, *of all persons holding permanent appointments in the state civil service,* when said section, as amended, becomes effective; and providing for *a civil service commission of three members,* prescribing their qualifications, method of appointment and confirmation, term of office and method of removal; and (2) further to amend said article XII *by adding thereto a new section* to be known and numbered as section 15 providing for the allocation *by law among and within not more than twenty administrative departments, of all permanent executive and administrative offices, departments and instrumentalities of the state government, except the governor, his administrative staff, and the lieutenant governor, and of their respective functions, powers and duties,* and providing that *the head of each such administrative department shall be a single executive who shall be (1) an elective officer of the executive department of the state, or (2) an officer appointed by an elective board, or (3) an officer appointed by the governor with the consent of the senate, and serving during* his pleasure, *but subject to the right of the governor, when the senate is not in*

*session, to make a temporary appointment until the next session of the senate, or (4) an officer appointed by an appointive board or commission, with the approval of the governor and serving during* his pleasure."

On December 30, 1949, said petitioners protested said title and ballot title and submission clause, and petitioned said board for a rehearing thereon. The objection made to the title of said initiative amendment was to the effect that, inasmuch as article XII of the Constitution relates to officers as well as to the state civil service, that said proposed title should be amended by inserting therein the word "officers." We think the objection to the title to the proposed initiative amendment is without merit, and it is therefore denied.

The principal controversy herein relates to the validity of the ballot title and submission clause above set forth, and most of the oral argument on both sides was devoted to that question.

In so far as pertinent to the present inquiry, section 1 of chapter 147, S. L. '41, provides: "Section 1. The original draft of all initiative petitions for proposed laws or amendments to the constitution to be enacted by the people shall, before they are signed by the electors or any of them, be submitted with a copy thereof to the secretary of state without any title thereto, submission clause, or ballot title providing the designation for or against which the voters shall express their choice for or against said proposed law or constitutional amendment; within three days after such admission, the secretary of state shall call to his assistance the attorney general and the reporter of the supreme court, the three of whom, a majority controlling, shall, within five days thereafter, designate and fix a proper fair title for said proposed law or constitutional amendment, also its ballot title and submission clause, which shall correctly and fairly express the true intent and meaning of the law or constitutional amendment, and immediately thereafter he shall deliver the same with the original to

the parties presenting it, keeping the copy with a record of the action taken thereon. Ballot titles, shall be brief and shall not conflict with those previously selected for any petition previously filed for the same election. If any person or persons presenting such initiative petition are not satisfied with the titles and submission clause thus provided and claim them to be unfair or that they do not fairly express the true meaning and intent of the proposed law or constitutional amendment, he or they may, within forty-eight hours after its return, file a motion with the secretary of state for a rehearing, which shall be passed upon by said board within forty-eight hours thereafter, and if overruled, upon request, a certified copy of said petition with the titles and submission clause of such proposed law or constitutional amendment, together with a certified copy of such motion for rehearing and of the ruling thereon, shall be furnished them by the secretary of state, and, if filed with the clerk of the supreme court within five days thereafter, shall be docketed as a cause then pending, which shall be placed at the head of the calendar and disposed of summarily, either affirming the action of said board or reversing it, in which case the court shall remand it with instructions, pointing out wherein said board is in error."

One requirement of the above provision of the statute is that said ballot title and submission clause shall not only correctly and fairly express the true intent and meaning of the proposed amendent, but also "shall be brief."

We have indicated by the italics in the proposed submission clause how extensively the board, in writing the proposed submission clause, repeated the exact language of the proposed amendment. In two instances the language is the same, but the structure of the sentence is changed, and in the last eleven lines the language is identical except for the change of the words "the pleasure of the governor" to "his pleasure."

The ballot title and submission clause, as fixed by the board, contains 369 words while the proposed amendment itself contains but 505 words. Obviously little effort was made by the board to comply with the mandatory requirements of the statute that ballot titles be brief.

Adequate provisions were made by the legislature in section 1, chapter 147, S. L. '41, following the excerpts therefrom above quoted, for full publicity as to the contents of all proposed amendments by providing that the full text thereof be published in a newspaper of general circulation throughout the state within thirty days after the fixing of "its ballot title and submission clause." The purpose of this provision is to acquaint the voters, before they enter the polling booths, as to the contents of measures submitted. To require that said text or a substantial portion thereof be again printed on the official ballot, is contrary to all precedent, could serve no useful puspose, and, as we are convinced from a study of the act as a whole, was not within the contemplation of the legislature.

We are fortified in this conclusion by the fact that the general assembly at its session in 1949, adopted House Concurrent Resolution No. 10 (S. L. '49, p. 775), submitting to the qualified electors an amendment to article XX of the Constitution. By this resolution it is proposed to amend section 2, of article XX relating to officers of the City and County of Denver and other home rule cities, together with their jurisdiction, terms, duties, compensation, and qualifications, and also to add a new section to be known as section No. 5, providing for the submission of proposed measures and charter amendments by the initiative, and also by the council of home rule cities. The proposed amendment to article XX of the Constitution contains 257 words. The submission clause fixed by the legislature contains 29 words and is as follow: "For the amendment to Article XX of the Constitution of the State of Colorado, relating to

the City and County of Denver and Other Home Rule Cities and Towns."

We conclude that the ballot title and submission clause, as fixed by the board in the present case, fails to comply with the statute and it accordingly is disapproved. The statute makes it our duty in such cases to "remand with instructions, pointing out where said board is in error." Accordingly, the matter is remanded to the board with instructions to revise the ballot title and submission clause as fixed by it so as to comply with the provisions of the statute to which we have called particular attention. We suggest the following, which we consider adequate, and which in our opinion complies with the requirements of the law:

An act to amend section 13 of article XII of the state Constitution, by providing for a state civil service, and a civil service commission to be appointed by the governor with the consent of the senate and removable by the governor for cause; providing what positions shall be included in and what shall be excluded from the civil service; and adding a new section No. 15, providing that all permanent executive and administrative offices, departments and instrumentalities of the state government except the office of governor and lieutenant governor shall be allocated by law among and within not more than twenty administrative departments, the administrative heads of which are to be excluded from civil service.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE HOLLAND dissent.

MR. JUSTICE STONE and MR. JUSTICE MOORE absent.

MR. JUSTICE HOLLAND dissenting.

I do not accept the majority opinion herein and therefore dissent. It is my view that the effect of the majority opinion will be an invasion of the functions of the chosen statutory officials.

This is an original proceeding instituted under, and controlled by, section 1, chapter 147, of the 1941 Session Laws as it relates to the initiative and referendum. Under the provisions of this statute our sole function is to point out errors of the board in its designation of a ballot title. The majority opinion fails, utterly, to disclose any error in the designated title and grounds its reversal solely on the proposition that the title so designated is not a compliance with the statutory provision, "Ballot titles shall be brief * * *."

In my opinion accent is not to be placed on brevity to the exclusion of the other vital provision of the statute which is to the clear effect that the ballot title and submission clause "* * * shall correctly and fairly express the true intent and meaning of the law or constitutional amendment, * * *." It is not to be overlooked that the proposed amendment, as is fully set out in the opinion, is fraught with many complications. For the purposes of this dissent, I am not concerned with the merits of the proposed amendment, but the voter should be. Publication of the amendment as required by statute is only one of the two steps in the process of informing the voter. The other is providing the voter with a ballot title from which the ordinary person may exercise intelligent and enlightened judgment in deciding how to mark his ballot. No authority discounts this primary right. It is not the fortune of every voter to have been privileged with a study of all election proposals. He has a right to expect that from the ballot provided him in the exercise of his franchise, he can obtain a fair understanding about the proposal upon which he is to vote. Any ballot title that falls short of this should be open for condemnation. The true intent and meaning of the proposal is not to be clouded by undue detail, neither is it to be so abbreviated as to not be readily comprehensible.

The petitioner is this case frankly states in his protest of the title filed with the board, "that it is utterly im-

possible to prepare a ballot title for any amendment which is both brief and comprehensible." Such being the admitted dilemma with which the board was confronted, it is not to be criticized or condemned upon finding itself confronted with a complicated proposal, to employ much of the identical wording of the proposed amendment in a valid title for the voters' information. The majority opinion makes much of the length of the designated title and says it contains 369 words while the proposed amendment itself contains only 505 words. The true criterion is not the number of words, but the kind. The statute places no limitation on the number of words to be used in a ballot title, and in other states, where such limitation has been made, the validity of such acts has often been brought into question. Some states require the printing of the full text of a proposed constitutional amendment. Our statute is directory and not mandatory on this subject, and the entire matter is left to the sound judgment and discretion of the officials charged with that duty. When they have acted without any abuse of that discretion, their finding or designation should have the respect of the courts. With intent to inform the voter, without concealment, quotation of the exact words of the proposed amendment is a virtue rather than a vice. This, regardless of the number of words necessary to fairly express the meaning and intent of the law. The majority opinion is critical of the action of the board by using the following language, "Obviously little effort was made to comply with the mandatory requirements of the statute that ballot titles be brief." I believe this to be unjust criticism and it certainly does not point out an error of the board. Whether the board title is to contain too many words or few is a matter entirely within its judgment, having in mind such brevity only as the fair disclosure or explanation of the terms of the proposal would permit. If we do not affirm the action of the board, our only function is to point out errors.

It is not for this court to transcend the clear duties of the statutory officials in dictating to them what, in the majority opinion, is the model title. The majority opinion makes such suggestion by proposing a ballot title not in itself a model of brevity since it contains 105 words, and by this suggestion overpasses the final function of the board. The board is placed in the embarrassing position of having to accept the court's proposed title or feel that bad taste is displayed in not doing so. The board should not be so shackled.

I perceive that the ordinary voter will be but little advised or informed as to the complicated matters involved in the proposed amendment by the ballot title suggested in the majority opinion.

The board having promptly functioned and exercised its best judgment without manifest errors, its designation should be respected, and I again say that the suggestion of a proper ballot title by this court is beyond our function. The action of the board should be approved and affirmed.

MR. CHIEF JUSTICE HILLIARD concurs in this dissent.