## No. 80SA203

**In The Matter of the Title, Ballot Title, Submission Clause and Summary Pertaining to the Branch Banking Initiative Adopted on March 19, 1980, and Amended on April 8, 1980**

(612 P.2d 96)

Decided June 9, 1980.

Frank L. Hays, Robert W. Hutchinson, for petitioner.

Vanatta and Spelts, P.C., Richard J. Spelts, Dean R. Vanatta, Scott F. Sullan, for proponents.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Mary J. Mullarkey, Solicitor General, Stephen H. Kaplan, First Assistant Attorney General, for Initiative Title Setting Board.

*En Banc.*

JUSTICE LOHR delivered the opinion of the Court.

This is an original proceeding pursuant to section 1-40-102(3), C.R.S. 1973 (1979 Supp.). The petitioner, James P. Thomas, challenges the action of the Initiative Title Setting Review Board[1] (Board) denying his motion for rehearing regarding the titles, summary, and submission clause fixed by the Board for the proposed initiative on branch banking. Standing to assert this challenge is conferred upon the petitioner, as a "qualified elector" other than one who submitted the initiative petition, by the statute pursuant to which this proceeding has been brought.

Petitioner contends that certain language in the titles, summary, and submission clause[2] misstates federal law; that the use of the word "convenience" is unfair; and that the language fails to disclose that authorization for existing detached banking facilities will be abolished. As a result, the petitioner asserts that the titles, summary, and submission clause are unfair and do not clearly express the true meaning and intent of the proposed law. *See* section 1-40-102(3), C.R.S. 1973 (1979 Supp.). We have reviewed each of the petitioner's contentions and conclude that the Board's action in denying the motion for rehearing should be affirmed.

This court has previously stated the principles by which it is guided in its review of a case such as the one now before us:
"(1) [W]e must not in any way concern ourselves with the merit or lack of merit of the proposed amendment since, under our system of government, that resolution rests with the electorate; (2) all legitimate presumptions must be indulged in favor of the propriety of the board's action; and (3) only in a clear case should a title prepared by the board be held invalid."
*Bauch v. Anderson,* 178 Colo. 308, 310, 497 P.2d 698, 699 (1972); *In the Matter of the Proposed Initiative on Transfer of Real Estate to Amend the Colorado Constitution by Adding a Section 9 to Article 18,* 200 Colo. 40, 611 P.2d 981 (1980); *In re: An Initiated Constitutional Amendment Respecting Rights of the Public to Uninterrupted Services by Public Employees,* 199 Colo. 409, 609 P.2d 631 (1980). This court is limited in its review to determining if the titles, summary, and submission clause are "unfair" or do not "clearly express

---

[1] The secretary of state, the attorney general, and the director of the legislative drafting office constitute an ad hoc board to designate and fix a proper fair title, together with a ballot title and submission clause, and to prepare a clear, concise summary of each law to be proposed by initiative. Section 1-40-101(2), C.R.S. 1973. We refer to that board as the Initiative Title Setting Review Board.

[2] The titles, summary, and submission clause fixed by the Board are set forth in Appendix A. The proposed initiative itself is set forth in full later in this opinion.

the true meaning and intent of the proposed law." Section 1-40-102(3), C.R.S. 1973 (1979 Supp.).

"Be It Enacted By The People of the State of Colorado:

"SECTION 1. 11-6-101, Colorado Revised Statutes 1973, as amended, is amended, BY THE ADDITION OF A NEW SUBSECTION, to read:

"11-6-101.

"(1.1) Effective July 1, 1981, any bank, with the approval of the banking board, may establish one or more branches anywhere in this state. Such approval shall be given if the banking board determines that the proposed branch will serve the public need and convenience in the community or area to be served. The procedure for processing any application for a branch shall be established under rules and regulations prescribed by the banking board. For the purpose of this subsection "branch" means a banking facility separate from the principal office of the bank, at which customer services and other banking activities are conducted. All administrative costs of filing and processing any application for a branch, as determined by the banking board, shall be paid by the applicant bank. Any conflicting provisions of subsection (1) of this section shall not apply on and after July 1, 1981."

## I.

The petitioner's first group of contentions relates to the accuracy and adequacy of the titles, summary, and submission clause to express the interrelation of the proposed initiated law and the federal laws governing national banking associations. "Bank" as used in the proposed initiated law includes national banking associations. Sections 11-1-101, -102(2), and -102(16), C.R.S. 1973.

■ Petitioner first contends that the summary incorrectly states that national banking associations may establish branches provided only that they meet the restrictions as to location imposed on state banks. The summary provides in part: "Current federal law permits national banking associations to establish branches when state banks are authorized to do so, subject to the restrictions as to location imposed by the state statute on state banks." This language is a fair summary of the pertinent portion of the McFadden Act, 12 U.S.C. § 36(c) (1976),[3] which provides for the establishment of branches by national banking associations. Petitioner's

---

[3] That portion of the McFadden Act which is relevant to the instant matter states:

"(c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches:

. . . .

"(2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the state in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks."

complaint appears to be that the Board's summary fails to explain the full impact the initiated law might have as a result of the McFadden Act. Petitioner contends that case law has held that the establishment of branches by national banking associations is also subject to state standards relating to matters other than location. Even if the petitioner's interpretation of federal case law is correct,[4] the language "when state banks are authorized to do so" adequately suggests that location is not necessarily the only relevant state criterion for evaluating a branch banking application by a national banking association. The legislature has mandated that the summary be at once clear and concise. Section 1-40-101(2), C.R.S. 1973 (1979 Supp.). It also must be a true and impartial statement of the intent of the proposed law and must not be an argument, nor likely to create prejudice either for or against the measure. *Id.* The treatment of the McFadden Act matter by the Board in preparing the summary is faithful to those criteria.

Petitioner next alleges that the language of the ballot title and submission clause contradicts federal law in that it states that the state banking board would have to authorize a branch of a national banking association whereas such authorization is the responsibility of the United States comptroller of the currency. The language of the proposed law clearly purports to apply to national banking associations as well as state banks. However, the parties seem to agree that federal law would not permit the state banking board to act with respect to applications of national banking associations for approval of branches. The Board struggled with this problem in establishing the language of the ballot title and submission clause. The transcript of the hearing before the Board on the petitioner's motion for rehearing reflects proposals by individual members of the Board to revise the language to make it more accurate and complete. Each proposal was discovered to have problems of its own and could not command approval of a majority of the members of the Board. The Board, after extensive consideration, elected to utilize the language now before this court. This language describes the true meaning and intent of the proposed law as derived from the language of that law and leaves the possible effects of federal law to be brought to the attention of the voters by public debate. *See In the Matter of the Proposed Initiative on Transfer of Real Estate to Amend the Colorado Constitution by Adding a Section 9 to Article 18, supra.* Being mindful of our duty to indulge all legitimate presumptions in favor of the Board's action, *Bauch v. Anderson, supra,* we conclude that the action taken by the Board should not be disturbed by this court.

---

[4] We express no opinion as to the petitioner's interpretation of case law with respect to the impact the proposed statute might have on the establishment of branches by national banking associations.

■ Petitioner next contends that the titles, summary, and submission clause incorrectly state that the state banking board can grant approval for a branch to "any" bank upon determination that the branch will serve the public need and convenience when in fact the state banking board cannot bind the federal comptroller with its interpretation of public need and convenience. Here again the Board has elected to describe the purported effect of the proposed law without attempting to explain the extent to which the law might not be able to be applied to national banks consistent with federal law. For the same reasons discussed in the immediately preceding paragraph, we will not disturb the action taken by the board.

## II.

■ Petitioner's next contention is that the use of the word "convenience" in the titles, summary, and submission clause is prejudicial. In the proposed statute "convenience" is part of a standard, *i.e.*, public need and convenience, that must be satisfied to obtain approval to establish a branch bank. The use of the word in the titles, summary, and submission clause is alleged to be prejudicial because that word is likely to be the basis of the campaign for branch banking. This court has held that "catch phrases" which are not a part of the text of a proposed amendment should be excised from the ballot title and submission clause. *Henry v. Baker,* 143 Colo. 461, 354 P.2d 490 (1960); *Say v. Baker,* 137 Colo. 155, 322 P.2d 317 (1958). However, *Henry v. Baker, supra,* and *Say v. Baker, supra,* are not applicable to the instant case because the term "convenience" is part of the proposed statute and is used in the titles, summary, and submission clause in the same manner in which it appears in the proposed statute.

Petitioner also argues that the titles, summary, and submission clause are misleading in failing to disclose that the comptroller of the currency might interpret public need and convenience differently than does the state banking board, with the result that branch banking applications for national banking associations might be subject to different standards than branch banking applications for state banks. Again, for reasons previously explained, we will not disturb the Board's decision to summarize the purported effect of the proposed law, leaving for public debate the question of the impact of federal law on implementation of the proposed law.

## III.

■ Petitioner's final argument is that the titles, summary, and submission clause fail to express the true meaning and intent of the proposed law by failing to disclose that the proposed law would abolish authorization for presently existing detached facilities. This argument is based on an interpretation by petitioner of the effect the proposed statute will have on the present law. Such effect is by no means certain and the proponents have stated it is not their intent that authorization for detached facilities

be abolished. If the proposed law is adopted and a conflict arises in the future with respect to the abolishment of authorization for detached facilities, a judicial determination of the effect of the proposed statute on current law may be made at that time. Under these circumstances the effect of the proposed law as to authorization for existing detached facilities need not be treated in the titles, summary, and submission clause in order to prevent unfairness or to express clearly the true meaning and intent of the proposed law. *See* section 1-40-102(3), C.R.S. 1973 (1979 Supp.).

We affirm the ruling of the Initiative Title Setting Review Board denying the petitioner's motion for rehearing.

JUSTICE LEE does not participate.

## APPENDIX A

The title to the proposed initiated amendment to the Statutes, as designated and fixed by the Secretary of State, Attorney General, and Director of the Legislative Drafting Office, is as follows:

"An Act to provide that beginning July 1, 1981, any bank may establish one or more branch banking facilities separate from the principal office of the bank anywhere in the state if the banking board determines that the proposed branch will serve the public need and convenience in the community or area to be served; and providing that all administrative costs of filing

"The term 'branch' is defined as a banking facility separate from the principal office of the bank, at which customer services and other banking activities are carried on.

"The proposed amendment would take effect July 1, 1981, and any provisions elsewhere in the amended section in conflict with the proposed

amendment would not be applicable after that date."

The ballot title and submission clause to the proposed initiated amendment to the Statutes, as designated and fixed by the Secretary of State, Attorney General, and Director of the Legislative Drafting Office, is as follows:

"Shall any bank, beginning July 1, 1981, be permitted to establish one or more branch banking facilities separate from the principal office of the bank anywhere in the state if the banking board determines that the proposed branch will serve the public need and convenience in the community or area to be served, all administrative costs of filing and processing an application for a branch to be paid by the applicant bank?"