## No. 80SA259

**In Re: Second Initiated Constitutional Amendment Respecting the Rights of the Public to Uninterrupted Service by Public Employees of 1980; Colorado AFL-CIO, Norman N. Pledger, Zelda Bransted, Joe Genova and Tracy Smith and Ruth E. Prendergast, Hugh C. Fowler and George W. Hawkins, and James C. Wilson, J. D. MacFarlane, and Mary Estill Buchanan**

(613 P.2d 867)

Decided June 23, 1980.

---

[2] The record indicates that such payments have been allowed by the commission in three previous ratemaking orders.

Brauer, Simons & Buescher, P.C., Walter C. Brauer III, Joseph M. Goldhammer, for petitioner-opponents.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Mary J. Mullarkey, Solicitor General, Stephen H. Kaplan, Assistant Attorney General, General Legal Services Section, for Initiative Title Setting Board.

No appearance for proponents.

*En Banc.*

JUSTICE DUBOFSKY delivered the opinion of the Court.

This is an original proceeding pursuant to section 1-40-102(3), C.R.S. 1973 (1979 Supp.). The Petitioners, Norman N. Pledger, Zelda Bransted, Joe Genova, and Tracy Smith,[1] challenge the denial of their motion for

---

[1] Petitioners are qualified electors who are dissatisfied with the titles, summary, and submission clause of the proposed constitutional amendment. Section 1-40-102(3), C.R.S. 1973 (1979 Supp.). The petition was also filed by an organizational opponent, Colorado AFL-CIO, described by Petitioners as an "interested party." However, Colorado AFL-CIO is not a "qualified elector" as required by statute, so we do not consider Colorado AFL-CIO as a petitioner in this action.

rehearing by the Initiative Title Setting Review Board (Board) regarding the titles, summary, and submission clause fixed by the Board for the proposed initiative on uninterrupted service by public employees.

Petitioners contend the Board exceeded its jurisdiction in fixing the summary for the proposed initiative on May 8, 1980; that the ballot title for the proposal conflicts with another ballot title previously selected for a similar initiative; that the Board should not have acted because the proponents of the initiative did not have a conference with the director of the Legislative Council and the director of the Legislative Drafting Office prior to submitting the initiative to the Board as required by section 1-40-101(1), C.R.S. 1973 (1979 Supp.); that the titles and submission clause are unfair because they inaccurately state that the initiative prohibits all binding arbitration; that the summary does not express the true intent of the initiative to require the discharge of employees; and that the summary does not explain the fiscal impact of the initiative as required by section 1-40-101(2), C.R.S. 1973 (1979 Supp.).[2] We affirm the Board's denial of the motion for rehearing on each of the Petitioners' contentions.

█ The people have reserved to themselves the right of initiative in Article V, Section 1, of the Colorado Constitution, and the duties of the Board with respect to initiatives are in sections 1-40-101, *et seq.*, C.R.S. 1973 (and 1979 Supp.). The initiated measures' title as set by the Board must be proper and fair, and must correctly and fairly express the true intent and meaning of the proposed measure. The ballot title and submission clause must be brief, and the summary must be a fair, concise, true and impartial statement of the intent of the proposed measure. The summary may not be an argument for or against the measure, nor can it be likely to create prejudice for or against the measure. The summary is to include an estimate of any fiscal impact upon the state or any of its political subdivisions with an explanation thereof.

█ The test to be applied by the Court in this case is well-established:

"(1) [W]e must not in any way concern ourselves with the merit or lack of merit of the proposed amendment since, under our system of government, that resolution rests with the electorate; (2) all legitimate presumptions must be indulged in favor of the propriety of the board's action; and (3) only in a clear case should a title prepared by the board be held invalid."

*Bauch v. Anderson,* 178 Colo. 308, 310, 497 P.2d 698, 699 (1972); *In the Matter of the Title, Ballot Title, Submission Clause and*

---

[2] The titles, summary, and submission clause fixed by the Board, as well as the proposed initiative, are set forth in full in Appendix A.

*Summary pertaining to the Branch Banking Initiative,* 200 Colo. 85, 612 P.2d 96 (1980); *In the Matter of the Proposed Initiative on Transfer of Real Estate to Amend the Colorado Constitution by adding a section 9 to Article XVII,* 200 Colo. 40, 611 P.2d 981 (1980); *In re An Initiated Constitutional Amendment respecting Rights of the Public to Uninterrupted Service by Public Employees,* 199 Colo. 409, 609 P.2d 631 (1980).

## I.

Petitioners first contend that the Board exceeded its jurisdiction by fixing the summary for the proposed initiative on May 8, 1980, one day after the statutory date for the last meeting of the Board. Section 1-40-101(2), C.R.S. 1973 (1979 Supp.).[3] The Board met as required at 2 p.m. on Wednesday, May 7th, to consider the titles, submission clause, and summary for the proposal. After the titles and submission clause were set, the Board considered the summary. The Board is required by section 1-40-101(2), C.R.S. 1973 (1979 Supp.), if it determines that the proposed constitutional amendment will have a fiscal impact on the state or any of its political subdivisions, to request assistance in such matter from the Division of Budgeting or the Department of Local Affairs. The Board inadvertently failed to request information from the Department of Local Affairs and the Division of Budgeting. A representative of the Division of Budgeting was present at the Board's meeting, but members of the Board were concerned that the failure to request and receive assistance from the Department of Local Affairs could jeopardize the initiative. In response to the Board's suggestion of a brief recess to obtain the missing information, one of the proponents[4] stated that he had another meeting to attend, and requested that the hearing be continued to the next day, May 8th. No one objected to the continuance, and the Board met on May 8, 1980, considered the comments of the Department of Local Affairs, and fixed the summary.

The purpose of the statutory time table for meetings of the Board is to assure that the titles, submission clause, and summary of an initiated measure are considered promptly by the Board well in advance of the date by which the signed petitions must be filed with the Secretary of

---

[3] Section 1-40-101(2), C.R.S. 1973 (1979 Supp.), provides that the Board:
"shall proceed to designate and fix a proper fair title for each such proposed law or constitutional amendment, together with a submission clause, at public meetings to be held on the first and third Wednesdays of each month, beginning at 2 p.m., in which a draft has been submitted to the secretary of state, with the last such meeting to be held the first Wednesday in May, and shall prepare a clear, concise summary of the proposed law or constitutional amendment."
The first Wednesday in May, 1980 was May 7th.
[4] The initiative proponents are Ruth E. Prendergast, Hugh C. Fowler, and George W. Hawkins.

State.[5] Here, the hearing was begun and substantially completed on the statutorily required date.[6] A continuance to the next day in order to comply fully with other statutory requirements does not frustrate the purpose of the statute. We believe that to invalidate this initiative on the basis of such minimal delay would be contrary to the spirit of the Colorado Constitution providing the right of initiative. The Colorado Constitution, as well as the statutes which implement it, must be liberally construed so as not to unduly limit or curtail the initiative rights of the people. *Billings v. Buchanan,* 192 Colo. 32, 555 P.2d 176 (1976); *Colorado Project-Common Cause v. Anderson,* 178 Colo. 1, 495 P.2d 220 (1972).

## II.

■ Section 1-40-101(2), C.R.S. 1973 (1979 Supp.), requires that ballot titles "shall not conflict with those selected for any petition previously filed for the same election . . . ." Petitioners contend that the ballot title chosen here conflicts with the ballot title selected for an earlier initiative filed by the proponents concerning the right of the public to uninterrupted service from public employees. The Board fixed the titles, submission clause, and summary of the first initiative, and the Board's denial of a request for rehearing was challenged in Supreme Court No. 80SA207, presently pending before us, by the same petitioners who challenge the second proposal. Because the proponents have advised us they do not intend to circulate the first initiative for signatures, we need not address whether the titles selected conflict.

The first initiative petition has not been submitted to the Secretary of State for approval. Section 1-40-107(1), C.R.S. 1973 (1979 Supp.).[7] The proponents have received approval from the Secretary of State for the second initiative petition. We retain jurisdiction in Supreme Court No. 80SA207, the first challenge, and should any qualified electors attempt to circulate the first version of this initiative, we direct the Secretary of State to defer approval of the petition as to form and content until the opponents have had an opportunity to raise the question of conflicting ballot titles. Absent approval for the first petition, the issue raised of possible conflict between the first and second measures is moot.

---

[5] Section 1-40-104, C.R.S. 1973 (1979 Supp.), requires that completed petitions must be filed with the Secretary of State at least four months before the election at which the initiative is to be voted upon.

[6] It is not clear from the statute (*see* footnote 3) that the summary must be prepared at the last meeting.

[7] Section 1-40-107(1), C.R.S. 1973 (1979 Supp.), provides:
"No petition shall be printed, published, or otherwise circulated until the secretary of state has approved it as to form, and the secretary of state shall assure that the petition contains only the matters required by this article and contains no extraneous material."

### III.

Petitioners maintain that the Board should not have set the titles, submission clause and summary because the proponents failed to have a meeting with the directors of the Legislative Council and Legislative Drafting Office as required by section 1-40-101(1), C.R.S. 1973 (1979 Supp.). The statute provides that the directors shall give the proponents their comments on any problems encountered concerning the format or content of the petitions. The comments become public documents when the titles, submission clause, and summary are approved by the Board.

The record of the meeting on the Petitioners' request for re-hearing indicates that there was a meeting with the directors on the proponents' first initiative. The written comments from that meeting are public. When the proponents filed their second version of essentially the same initiative, the directors told the proponents that a second review and meeting with the directors would not be necessary because they had no comments beyond those made on the first proposal. We agree that there has been substantial compliance with the statutory prerequisites because the proponents are not required to accept any comments made by the directors[8] and because the directors indicated they had no further comments.

### IV.

Petitioners next contend that the titles and submission clause prepared by the Board are unfair and do not express the true meaning and intent of the proposed amendment. The language to which the Petitioners object declares that the initiative "prohibit[s] public employers from submitting to binding arbitration." A proponent told the Board at its May 7th meeting that one of the reasons for the second initiative was to clarify that the amendment applied to "interest" or "economic" arbitration establishing wages, hours or other terms and conditions of employment, and not to "grievance" arbitration under a contract. The Board justifies the titles and submission clause selected because of the need for brevity,[9] and further distinctions were not necessary to identify the initiated measure described by the titles and submission clause. *Cf. Dye v. Baker,* 143 Colo. 458, 354 P.2d 498 (1960) (purpose of submission clause is to "fairly and succinctly advise the voters . . . so that in the haste of an election the voter will not be misled . . . ."). The Board believed the distinction between types of arbitration is more appropriate for the summary, where it is included, and for public debate. Because we have a duty to make all legitimate presumptions in favor of the Board's action, *Bauch v. Anderson, supra,* we conclude that the titles and submission clause set by the Board should not be disturbed by this Court.

---

[8] Section 1-40-101(1), C.R.S. 1973 (1979 Supp.).
[9] *Cook v. Baker,* 121 Colo. 187, 214 P.2d 787 (1950).

## V.

■ Petitioners challenge the summary for failing to express the true intent and meaning of the provision of the initiative requiring discharge of employees violating its provisions. The Board considered at length the challenged language at its meeting on the motion for rehearing and concluded that the language of the summary was accurate. Our review of the record confirms that the language chosen by the Board reflects the true meaning and intent of the initiative.

## VI.

■ Finally, the Petitioners contend that the statute requires that the fiscal impact of the measure be explained. Section 1-40-101(2), C.R.S. 1973 (1979 Supp.).[10] The Board summarized the fiscal impact of the proposed amendment as "cannot be determined because of the many variables involved." The Petitioners say that the explanation of the fiscal impact should have included the reasons that the impact could not be determined: i.e., the difficulty in predicting the number of strikes, the number of people who might participate, the number of appeals.

The Board correctly found that the fiscal impact of the proposed amendment cannot be determined because of the many variables involved. *In re: An Initiated Constitutional Amendment Respecting Rights of the Public to Uninterrupted Service by Public Employees, supra.* The Board determined that the Petitioners' requested explanation would be an argument for or against the proposal and would create prejudice for or against the proposal in violation of section 1-40-101(2), C.R.S. 1973 (1979 Supp.). The Board's decision not to supply an explanation of its inability to determine fiscal impact is supported by the record. Therefore, we will not disturb the action taken by the Board.

Accordingly, we affirm the ruling of the Initiative Title Setting Review Board denying the Petitioner's motion for rehearing.


## APPENDIX A
## PROPOSED INITIATIVE ON
## UNINTERRUPTED SERVICES BY PUBLIC EMPLOYEES
Adopted Title, Ballot Title, Submission Clause, and Summary

The title as designated and fixed by the Board is as follows:
AN AMENDMENT TO ARTICLE XII OF THE CONSTITUTION OF THE STATE OF COLORADO PROHIBITING STRIKES, WORK STOPPAGES, SLOWDOWNS, OR OTHER INTERRUPTION OF

---

[10] Section 1-40-101(2), C.R.S. 1973 (1979 Supp.), provides: ". . . . and the summary shall include an estimate of any such fiscal impact, together with an explanation thereof."

SERVICES BY STATE AND LOCAL PUBLIC EMPLOYEES; DI-
RECTING THE DISCHARGE, PURSUANT TO PROCEDURES AP-
PLICABLE IN THE JURISDICTION INVOLVED, OF A PUBLIC
EMPLOYEE FOUND TO HAVE ENGAGED IN SUCH PROHIB-
ITED ACTIVITIES; PROHIBITING PUBLIC EMPLOYERS FROM
SUBMITTING TO BINDING ARBITRATION; AND PROVIDING
THAT NO PUBLIC EMPLOYEE SHALL BE REQUIRED TO JOIN
OR TO PAY DUES TO ANY EMPLOYEE ORGANIZATION AS A
CONDITION OF PUBLIC EMPLOYMENT.

The ballot title and submission clause as designated and fixed by the
Board is as follows:

SHALL ARTICLE XII OF THE CONSTITUTION OF THE STATE
OF COLORADO BE AMENDED TO PROHIBIT STRIKES, WORK
STOPPAGES, SLOWDOWNS, OR OTHER INTERRUPTION OF
SERVICES BY STATE AND LOCAL PUBLIC EMPLOYEES; TO
DIRECT THE DISCHARGE, PURSUANT TO PROCEDURES AP-
PLICABLE IN THE JURISDICTION INVOLVED OF A PUBLIC
EMPLOYEE FOUND TO HAVE ENGAGED IN SUCH PROHIB-
ITED ACTIVITIES; TO PROHIBIT PUBLIC EMPLOYERS FROM
SUBMITTING TO BINDING ARBITRATION; AND TO PROVIDE
THAT NO PUBLIC EMPLOYEE SHALL BE REQUIRED TO JOIN
OR TO PAY DUES TO ANY EMPLOYEE ORGANIZATION AS A
CONDITION OF PUBLIC EMPLOYMENT?
The summary as prepared by the Board is as follows:
    The proposed amendment would prohibit strikes by public employees,
as well as work stoppages, slowdowns, or interruptions of service. Public
employees means employees of the state or any political subdivision
thereof, or any agency of either, including but not limited to, employees of
school districts, special districts, authorities, cities and counties, home rule
and statutory counties, cities, and towns, and territorial charter cities.
    The amendment would provide for the immediate discharge, pursuant
to procedures applicable in the jurisdiction involved, of any employee
found by a court or by an appropriate entity of the public employer to
have engaged in any activities prohibited by the amendment.
    The amendment would prohibit a public employer from submitting to
binding arbitration as to establishment of wages, hours, and other terms
and conditions of employment of public employees; however, the amend-
ment would not limit access to the courts or other dispute-resolving meth-
ods where such access otherwise exists, in matters concerning such wages,
hours, and other terms and conditions of employment. In addition, any re-
quirement that a public employee join or pay dues or fees to any employee
organization as a condition of his public employment would be prohibited.

The amendment would permit the general assembly to enact laws in furtherance of the policy expressed in the amendment, but not laws restricting the prohibitions or penalties of the amendment.

The fiscal impact of this proposed amendment cannot be determined because of the many variables involved.

The proposed initiative AMENDMENT TO THE CONSTITUTION OF THE STATE OF COLORADO (of which the foregoing title is hereby made or constituted a part) is as follows:

Be It Enacted by the People of the State of Colorado:

Article XII of the Constitution of the State of Colorado is amended by the addition of a new section to read:

Section 16.  Rights of the public to uninterrupted services by public employees. (1) It is hereby declared to be against the public interest and welfare, and in violation of the rights of the citizens of this state, for public employees to interrupt services rendered to the citizens of this state. Public employees in this state are prohibited from engaging in any work stoppage, slowdown, or strike, or from engaging in any interruption of services. For the purpose of this section, the term "public employer" means the state or any political subdivision thereof, or any agency of either, including, but not limited to, school districts, special districts, authorities, cities and counties, home rule and statutory counties, cities, and towns, and territorial charter cities, and the term "public employee" means any nonelective officer or employee of a public employer.

(2) Upon determination by any court having jurisdiction or by the individual, board, or agency having the duty to act on behalf of a public employer in the employment of public employees that any public employee has engaged in activity prohibited by this section 16, such employee shall be deemed to have abandoned his employment and shall be immediately discharged from his employment pursuant to procedures applicable to employees of the jurisdiction involved.

(3) No public employer shall submit to binding arbitration establishing the wages, hours, or other terms and conditions of employment of public employees.

(4) No public employee shall be required to join or pay dues to any employee organization as a condition of his employment with a public employer.

(5) The general assembly may enact laws in furtherance of the policy of this section 16, but may not restrict its prohibitions or its penalties.

(6) This section is to be construed liberally to prevent actions by public employees which deny, interrupt or diminish services to the public.

This section is in all respects self-executing.