In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE APPROVED FEBRUARY 12, 1992, With Regard to the Proposed Initiated Constitutional Amendment Concerning Limited Gaming in the Town of Parachute (Moratorium on Limited Gaming), and the Motion for Rehearing Denied on February 28, 1992.

James E. Klodzinski, Charles R. Sarner, Petitioners,

and

Dave Beasley, Keith M. Pockross, and Gary Dean, Respondents,

and

Ray Slaughter, Doug Brown, and Natalie Meyer, Title Setting Board.

No. 92SA97.

Supreme Court of Colorado, En Banc.

May 18, 1992.

---

James E. Klodzinski, petitioner, Trinidad, pro se.

Charles R. Sarner, petitioner, Colorado Springs, pro se.

Keith M. Pockross, Colorado Springs, Berenbaum & Weinshienk, P.C., Denver, for respondents.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., and Maurice G. Knaizer, Deputy Atty. Gen., Denver, for Title Setting Bd.

Justice MULLARKEY delivered the Opinion of the Court.

Charles R. Sarner and James E. Klodzinski, registered electors in Colorado, bring this petition under section 1–40–102(3)(a), 1B C.R.S. (1991 Supp.), challenging the title, ballot title and submission clause and summary (title and summary) adopted by the Title Setting Board (Board) for a proposed initiated constitutional amendment concerning limited gaming in the town of Parachute, Colorado. The proposed initiative would amend Article XVIII, Section 9 of the Colorado Constitution. The title and summary of the proposed amendment, adopted by the Board on February 12, 1992, are appended to this opinion. The petitioners make two claims: that the Board lacked jurisdiction to set the title and summary of the proposed amendment on that date, and that even if the Board did have jurisdiction, such title and summary are unfair and do not clearly express the true meaning and intent of the proposed initiated constitutional amendment. We disagree and affirm the Board.

I.

The Board's statutory duties and the standards for our review of a title setting by the Board were recently detailed in our opinion in *In the Matter of the Title, Ballot Title and Submission Clause Approved September 4, 1991, With Regard to the Proposed Initiated Constitutional Amendment Concerning Limited Gaming in Manitou Springs, Fairplay and in Airports,* 826 P.2d 1241 (Colo.1992) (hereinafter *In re Limited Gaming in Manitou Springs*), and we will not restate them here. We proceed to the petitioners' claims. The basis of the petitioners' challenge to the Board's jurisdiction is Art. V, Section 1(5) of the state constitution, which provides:

The original draft of the text of proposed initiated constitutional amendments ... shall be submitted to the legislative research and drafting offices of the general assembly for review and comment. No later than two weeks after submission of the original draft, unless withdrawn by the proponents, the legislative research and drafting offices of the general assembly shall render their comments to the proponents of the proposed measure at a meeting open to the public, which shall be held only after full and timely notice to the public. Such meeting shall be held prior to the fixing of a ballot title....

Pursuant to this provision, and section 1–40–101(1), 1B C.R.S. (1991 Supp.), the legislative research and drafting offices of the general assembly scheduled a public meeting on the proposed initiative for January 30, 1992. The notice for this public meeting was posted on January 16, 1992. Subsequently, but no later than January 24, 1992, the legislative offices posted an amended notice which advanced the date of the public meeting by one day, to January 29, 1992. The public meeting was held on January 29, 1992.

Petitioners contend that posting notice of a public meeting for a certain date, and subsequently advancing the date of the meeting, frustrate the constitutional requirement for full and timely notice of the meeting to the public. The January 29 meeting, it is urged, did not qualify as the public meeting which is a condition precedent to the Board's exercise of its jurisdiction to set the proposed amendment's title and summary. Thus, the issue is whether the amended notice was full and timely notice within the meaning of the constitution.

Petitioners support their argument by reference to our recent decision in *In the Matter of the Title, Ballot Title and Submission Clause, and Summary Adopted May 16, 1990 by the Board and Pertaining to the Proposed Initiative Under the Designation "Tax Reform"*, 797 P.2d 1283 (Colo.1990) (hereinafter *In re Tax Reform*). There, we found the Board was without jurisdiction to set the title and summary of a proposed constitutional amendment concerning sales and use tax because the proposed initiative was not submitted to the legislative offices for comment at a public meeting. An earlier version of the proposed amendment was properly reviewed by the legislative offices but, after a title was set for that measure by the Board, it was abandoned by its proponents. We not only found that the earlier version of the amendment was "much longer and more comprehensive" than the succeeding proposal, but more significantly held that one meeting "cannot serve as the constitutionally required predicate for setting two different titles for two initiatives." 797 P.2d at 1286, 1287. *But see In re Second Initiated Constitutional Amendment Respecting the Rights of the Public to Uninterrupted Service by Public Employees of 1980*, 200 Colo. 141, 147, 613 P.2d 867, 870–71 (1980) (under prior constitutional provision, second meeting not required when second proposed initiative was essentially the same as first proposed initiative and legislative officials told proponents that a second meeting was unnecessary because the officials had "no comments beyond those made on the first proposal").

■ While we affirm that there is "an overriding public purpose served by the presentation of comments and review in a public meeting," *In re Tax Reform*, 797 P.2d at 1287, that purpose was not defeated by the advancement of the date for the meeting when notice of the date change was posted by the legislative offices. The legislative offices have a mere two weeks after submission of the draft of a proposed amendment by the proponents to hold the required public meeting. The meeting could not have been postponed beyond the original scheduled date. Given this contracted time frame, a notice posted five days before the new date for such public meeting is constitutionally adequate.

A meeting is mandated at which the legislative offices "shall render their comments to the proponents of the proposed measure...." *Colo.Const.*, Art. V, Sec.

1(5). Section 1–40–101, 1B C.R.S. (1991 Supp.), parallels the constitution and provides that the legislative offices "shall render their comments to the proponents of the [initiative] petition concerning the format or contents of the petition...." Although good policy would have the legislative offices minimize scheduling problems, a public meeting notice of which was posted five days before and at which the legislative offices presented their review and comments on the proposed amendment satisfies the constitution. We hold that the Board had jurisdiction to set the title and summary of the proposed amendment.[1]

## II.

Petitioners assert that even if the Board did have jurisdiction, the title and summary which the Board set for the proposed amendment do not fairly reflect the intent and meaning of the proposed amendment. The proposed amendment, in addition to allowing limited gaming in the town of Parachute, allows such gaming without certain conditions which apply to limited gaming in Central City, Black Hawk and Cripple Creek, the three Colorado political subdivisions in which limited gaming is currently allowed under the constitution. The conditions pertain to historic architectural style, to maximum square footage of any building used for limited gaming and to the hours of gaming operations. *See Colo. Const.*, Art. XVIII, Sec. 9(3). Petitioners claim that, because these conditions differ, the proposed amendment establishes a new standard of limited gaming which is likely to be controversial and significant to the electorate. The petitioners conclude that the title and summary must indicate that the town of Parachute will be exempt from the conditions which otherwise apply to limited gaming. We disagree.

As drafted, the title and summary indicate that limited gaming in the town of Parachute will be allowed "under condi-

tions which may differ from those applicable" to the other political subdivisions. This is sufficient. If the title and summary "reflect the central features of the initiated measure in a clear and concise manner, we will not interfere with the Board's choice of language." *In re Limited Gaming in Manitou Springs,* 826 P.2d at 1245. The title and summary need not indicate every discrete feature of a proposed measure. Moreover, the summary "is not designed to fully educate the people on all aspects of the proposed law." *Id.,* at 1244–45.

To allow limited gaming in one political subdivision without the particular conditions presently mandated by the constitution for limited gaming in other political subdivisions does not establish a new definition or standard of limited gaming. The conditions presently imposed on limited gaming pertain to how limited gaming can be pursued, not what limited gaming is or is not. In Colorado, " 'Limited gaming' means the use of slot machines and the card games of blackjack and poker, each game having a maximum single bet of five dollars." *See Colo. Const.,* Art. XVIII, Sec. 9(4)(b). The proposed amendment does not change this definition of limited gaming.

*In the Matter of the Title and Submission Clause Adopted April 4, 1990, Pertaining to the Proposed Initiative on Parental Notification of Abortions for Minors,* 794 P.2d 238 (Colo.1990), does not compel a different result. There, we held that a proposed amendment defined abortion such that approval of the amendment would establish a new legal definition of abortion. That a new definition of abortion is likely to be controversial to the electorate goes without saying. The same cannot be said of the square footage maximums in, and the limits on the hours of operation of, casinos. We hold that the title and summary set by the Board adequately reflect that limited gaming in the town of

---

**1.** We note that a transcript of the public meeting is available and that the petitioners have availed themselves of the transcript. *See In re Uninterrupted Service by Public Employees,* 200 Colo. 141, 147, 613 P.2d 867, 871 (comments of the legislative offices are public documents).

Furthermore, the petitioners had an opportunity to be heard, and in fact were heard, at the public meeting held by the Board in order to set the title and summary for the proposed amendment.

Parachute will be allowed without the architectural and other conditions imposed on limited gaming elsewhere.

The title and summary set by the Board are affirmed.

APPENDIX

Proposed Initiative on "Moratorium on Limited Gaming"

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO ARTICLE XVIII OF THE COLORADO CONSTITUTION TO PERMIT LIMITED GAMING IN THE TOWN OF PARACHUTE UNDER CONDITIONS WHICH MAY DIFFER FROM THOSE APPLICABLE TO CENTRAL CITY, BLACK HAWK AND CRIPPLE CREEK; TO PROHIBIT LIMITED GAMING OUTSIDE OF CENTRAL CITY, BLACK HAWK, CRIPPLE CREEK AND PARACHUTE UNTIL 1 JANUARY 2000; TO FIX THE MAXIMUM ALLOWABLE STATE FEES AND TAXES ON LIMITED GAMING UNTIL 1 JANUARY 2000 AT THE LEVELS ESTABLISHED BY THE GAMING COMMISSION AS OF 1 JANUARY 1992; AND TO ALLOCATE FEE AND TAX REVENUES FROM LIMITED GAMING IN PARACHUTE, IN PART TO FUND PUBLIC SCHOOLS.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO ARTICLE XVIII OF THE COLORADO CONSTITUTION TO PERMIT LIMITED GAMING IN THE TOWN OF PARACHUTE UNDER CONDITIONS WHICH MAY DIFFER FROM THOSE APPLICABLE TO CENTRAL CITY, BLACK HAWK AND CRIPPLE CREEK; TO PROHIBIT LIMITED GAMING OUTSIDE OF CENTRAL CITY, BLACK HAWK, CRIPPLE CREEK AND PARACHUTE UNTIL 1 JANUARY 2000; TO FIX THE MAXIMUM ALLOWABLE STATE FEES AND TAXES ON LIMITED GAMING UNTIL 1 JANUARY 2000 AT THE LEVELS ESTABLISHED BY THE GAMING COMMISSION AS OF 1 JANUARY 1992; AND TO ALLOCATE FEE AND TAX REVENUES FROM LIMITED GAMING IN PARACHUTE, IN PART TO FUND PUBLIC SCHOOLS?

The summary as prepared by the Board is as follows:

This measure authorizes limited gaming in Parachute as of June 1, 1993, without local approval or ordinance. Gaming under this measure is governed by existing regulations of the Colorado limited gaming control commission, subject to special provisions allowing the town of Parachute to enact ordinances setting forth conditions for the conduct of limited gaming activities including hours of operation and floor-area and building specifications for premises where gaming will take place. These conditions may differ from those imposed in existing constitutional limitations applicable to Central City, Black Hawk, and Cripple Creek. The measure also specifies how tax revenues from limited gaming in Parachute shall be spent, with 60% allocated to the statutory state public school fund, 20% to the town of Parachute for tourism promotion and public improvements with any surplus to be transferred to the state tourism promotion fund, another 10% to the town of Parachute without restrictions, and 10% to Garfield County.

The measure prohibits limited gaming in Colorado except in Central City, Black Hawk, Cripple Creek and Parachute from the measure's effective date to January 1, 2000. The limited gaming control commission is directed by the measure to study the effects of limited gaming on the state and to report its findings and recommendations to the governor and the general assembly between July 1 and October 31, 1999.

Until 1 January, 2000, the measure fixes the percentage of gaming proceeds and the applicable license fees to be paid for the privilege of conducting gaming at the percentage and license fees established by the gaming commission as of January 1, 1992.

The fiscal impact of the measure is indeterminate. Additional tax revenues generated by limited gaming activity in Parachute will be at least partially offset by increased costs for law enforcement, roads,

and other government services; however, these revenues and costs cannot be predicted accurately.

Adjourned 3:39 p.m.