**In the Matter of the Title, Ballot Title and Submission Clause Adopted April 4, 1990, Pertaining to the PROPOSED INITIATIVE ON PARENTAL NOTIFICATION OF ABORTIONS FOR MINORS:**

**Terre Lee Rushton, Petitioner,**

**and**

**The Coalition for your Right to Know, Inc., Respondent,**

**and**

**Natalie Meyer, Douglas G. Brown and Duane Woodard, Title Setting Board.**

**No. 90SA163.**

Supreme Court of Colorado,
En Banc.

July 2, 1990.
Rehearing Denied July 19, 1990.

Kelly, Haglund, Garnsey & Kahn, James W. Hubbell, Denver, for petitioner.

Charles J. Onofrio, Denver, for respondent.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Gen. Legal Services, Denver, for Title Setting Bd.

Justice ROVIRA delivered the Opinion of the Court.

This is an original proceeding brought under section 1–40–102(3), 1B C.R.S. (1989 Supp.), by a registered elector, Terre Lee Rushton. She challenges the denial of her motion for rehearing by the Initiative Title Setting Review Board (Board) regarding both the title, and the ballot title and submission clause fixed by the Board for a proposed initiative, which requires that notice be given to an unemancipated child's parent(s) or guardian(s), prior to the performance of a procured abortion.[1] Rushton contends that the title and the ballot title and submission clause designated by the Board fail to fully and fairly express the intent of the proposed initiative.[2] We agree, and, therefore, remand to the Board with instructions.

## I

The respondent, The Coalition For Your Right to Know, Inc., has proposed an initiative requiring that notice be given to an unemancipated minor's parent(s) or guardian(s) at least 48 hours prior to the performance of a procured abortion. The text of the proposed initiative is set forth in the appendix to this opinion. Two parts of the proposed initiative are relevant to the issues raised here. First, the legislative declaration provides, in part, that:

> [A]gencies of government have been usurping parental rights and that the Colorado General Assembly has proven itself impotent in responding to this erosion of the parent-child relationship, and recognizing further that the United States Supreme Court has presumed to deny legal personhood to all unborn children and has additionally relegated parents of minor girls to a second-class status behind nurses, counselors, physicians and other third parties who, in unrestrained fashion, encourage, counsel and promote improvident decisions by a minor child to abort her offspring, and has allowed only those State laws which provide but limited and voidable parental involvement, and that even this limited involvement has been denied to the parents in this State by the inaction of the Colorado General Assembly....

Second, the proposed initiative contains a definition of the term abortion, which states that:

> For purposes of this article, "abortion" means a procured abortion, whether or not payment is involved, by the use of any means to terminate the pregnancy with knowledge that the termination by those means will, with reasonable likelihood, cause the death of the minor child's unborn offspring at any time after fertilization.

The title designated by the Board describes the proposed initiative as:

AN ACT PROHIBITING A PROCURED ABORTION UPON AN UNEMANCI-

---

1. The term "procured" is not defined in the proposed initiative.

2. The petitioner does not object to the summary of the proposed initiative prepared by the Board.

PATED MINOR UNTIL AT LEAST 48 HOURS AFTER WRITTEN NOTICE TO THE PARENT(S) OR GUARDIAN(S) OF SUCH MINOR.

The Board designated the following ballot title and submission clause for the initiative:

SHALL THERE BE AN ACT PROHIBITING A PROCURED ABORTION UPON AN UNEMANCIPATED MINOR UNTIL AT LEAST 48 HOURS AFTER WRITTEN NOTICE TO THE PARENT(S) OR GUARDIAN(S) OF SUCH MINOR?

Finally, the summary prepared by the Board provides that:

This measure requires that no procured abortion shall be performed upon an unemancipated minor until a written notice has been served in a specified manner upon such minor's parent(s) or guardian(s) at least 48 hours before such abortion is to be performed. Notice is not required when a parent or guardian certifies in writing that such parent or guardian has already been notified or when the minor alleges that she is a victim of child abuse or neglect. For purposes of this measure "abortion" means a procured abortion, whether or not payment is involved, by the use of any means to terminate the pregnancy with knowledge that the termination by those means will, with reasonable likelihood, cause the death of the minor child's unborn offspring at any time after fertilization.

The measure makes it a class 1 misdemeanor to perform or attempt an abortion upon a minor in violation of the parental or guardian notification requirement and a class 5 felony to counsel, advise, encourage, or conspire to induce or persuade a pregnant minor to provide false information to a physician in order to obtain an abortion without providing parental or guardian notification. The measure establishes defenses to criminal or civil actions under its provisions.

The measure provides for a court procedure for a minor to obtain an abortion without parental or guardian notification only if the notification process is restrained or enjoined.

The fiscal impact of the measure is indeterminate.

## II

Article V, section 1, of the Colorado Constitution reserves to the people the right of initiative, and section 1-40-101(2), 1B C.R.S. (1989 Supp.), establishes the duties of the Board. The Board sets an initiated measure's title which must correctly and fairly express the true intent and meaning of the proposed measure, be brief, and unambiguously state the principle of the proposal. The Board also prepares a summary of the initiative which must be clear, concise, and a true and impartial statement of the intent of the proposal.[3] The summary shall not be an argument, nor likely to create prejudice, for or against the measure. *In re Title, Ballot Title & Submission Clause, & Summary Pertaining to the Sale of Table Wine in Grocery Stores,* 646 P.2d 916 (Colo.1982). Further, if in the opinion of the Board the proposed law will have a fiscal impact on the state or any of its political subdivisions, the summary shall include an estimate of any such fiscal impact together with an explanation thereof. *Id.* at 919.

The principles which guide us in our review of this case are well established: (1) [W]e must not in any way concern ourselves with the merit or lack of merit of the proposed [initiative] since, under our system of government, that resolution rests with the electorate; (2) all legitimate presumptions must be indulged in favor of the propriety of the board's action; and (3) only in a clear case should a title prepared by the board be held invalid.

*Bauch v. Anderson,* 178 Colo. 308, 310, 497 P.2d 698, 699 (1972); *See also In re Sale of*

---

3. The right to rehearing and appeal from a decision of the Board is set out in sections 1-40-101(3), 1B C.R.S. (1980), and 1-40-102(3), 1B C.R.S. (1989 Supp.).

*Table Wine in Grocery Stores,* 646 P.2d 916 at 919.

■ Neither this court, nor the Board may go beyond ascertaining the intent of the initiative so as to interpret the meaning of the proposed language or suggest how it will be applied if adopted. *In re Title, Ballot Title & Submission Clause, & Summary Pertaining to Casino Gaming,* 649 P.2d 303, 310 (Colo.1982).

■ Our role is to determine whether the title, and the ballot title and submission clause correctly and fairly reflect the purpose of the proposed amendment. *In re Proposed Initiative Concerning Drinking Age,* 691 P.2d 1127 (Colo.1984). We must determine whether the documents presented to the electorate "fairly and succinctly advise the voters what is being submitted, so that in the haste of an election the voter will not be misled into voting for or against a proposition by reason of the words employed." *Dye v. Baker,* 143 Colo. 458, 460, 354 P.2d 498, 500 (1960).

■ Rushton asserts that the initiative is intended to "act as a referendum on judicial and legislative decisions denying legal personhood to all unborn children," and contends that this intent is apparent from both the legislative declaration and the definition of the term "abortion." She argues that the title and the ballot title and submission clause fail to express the true meaning and intent of the proposed initiative, because neither discloses the measure's definition of "abortion." Rushton concludes that under these circumstances, voters cannot intelligently determine whether to support or oppose the initiative.

The proponent contends, however, that the practical effect of the abortion definition will be "minimal." It argues that the impact of this provision is limited because the definition of abortion contained in the proposed initiative is preceded by the phrase "for purposes of this article."

The history of the proceedings before the Board provides a useful starting point for our analysis of whether the title and ballot title and submission clause fairly reflect the content of the proposed initiative. The original version of the proposed initiative defined "abortion" as "the use of any means to terminate [a] pregnancy with knowledge that the termination ... will, with reasonable likelihood, cause the death of the minor child's unborn child." It also defined "unborn child" as "any individual human being from fertilization until birth."

Some Board members were concerned that the title and ballot title and submission clause, advocated by the proponent of the initiative, did not disclose the definition of either of these terms. For example, one Board member stated that the definition of abortion contained in the proposed initiative was

> such a fundamental issue in a whole abortion [debate] that public notice ought to be given to the public that we're writing into our statute a very basic notion that is a subject of much controversy both by your groups and by the groups who oppose it.

The proponent withdrew the proposed initiative, prior to the designation of the title and ballot title and submission clause, and later resubmitted an amended draft. The second draft, which is now before us, does not contain a separate definition of the term "unborn child." However, the word "abortion" was amended to mean "the use of any means to terminate the pregnancy with knowledge that the termination ... will, with reasonable likelihood, cause the death of the minor child's unborn offspring at any time after fertilization." The Board considered these amendments and subsequently approved the title and ballot title and submission clause now before us.[4]

The amended text of the proposed initiative, however, is not substantively different from the first draft. In effect, the "un-

---

4. One Board member noted that "unborn child": [I]s no longer a separate definition, it is now incorporated as unborn offspring in another definition which is preceded by the words, for purposes of this Article. And that sub-section is preceded by words up above as used in this article.... Those [amendments] appear to me to reflect a good faith effort to limit the effect of this language....

born child" definition contained in the first draft has been incorporated into the amended definition of "abortion" contained in the second draft, and the term "unborn offspring" has replaced the term "unborn child." Thus, in the context of the initiative, the word "child" is synonymous with the word "offspring." *See Webster's Third New International Dictionary* 1568 (1964). In addition, in contrast to the presently existing statutory proscription against criminal abortion, which defines pregnancy as the implantation of an embryo in the uterus, § 18–6–101(3), 8B C.R.S. (1986), the proposed initiative defines abortion in terms of terminating the pregnancy "at any time after fertilization" and thus implies that pregnancy, for purposes of parental notification, occurs at fertilization. The amendment did nothing to address the well taken observation by one Board member that the public should be informed of the definition of abortion.

Further, the legal status of the fetus is one of the central issues in the abortion debate. Neither Colorado statute nor common law has addressed the issue of when life begins. Thus, by defining "abortion" as the termination of pregnancy by "caus[ing] the death of the minor child's unborn offspring at any time after fertilization," the proposed initiative adopts a legal standard that is new and likely to be controversial, even though limited in application to the implementation of the proposed parental notification initiative. Certainly, the voters are entitled to know of this new standard which will be of significance to all concerned with the issues surrounding the subject of abortion.

█ It is well established that the Board must "act with utmost dedication to the goal of producing documents which will enable the electorate, whether familiar or unfamiliar with the subject matter of a particular proposal, to determine intelligently whether to support or oppose such a proposal." *In re Proposed Initiative Con-*

*cerning "State Personnel System,"* 691 P.2d 1121, 1123 (Colo.1984). Though included in the summary, the abortion definition is absent from the title and the ballot title and submission clause prepared by the Board. Without this definition, these two documents do not fully inform the signors of the initiative petition and the persons voting on the initiative; and, consequently, do not fairly reflect the contents of the proposed initiative.

To correctly and fairly reflect the contents of the proposed amendment, the title should be amended as follows:[5]

> An act (1) prohibiting a procured abortion upon an unemancipated minor until at least 48 hours after her parents or guardians receive written notice of the procedure and (2) defining "abortion" as the use of any means to terminate the pregnancy with knowledge that the termination will, with reasonable likelihood, cause the death of the minor's unborn offspring at any time after fertilization.

Similarly, the ballot title and submission clause should be revised in the same manner.

Accordingly, we reverse the action of the Board and remand with directions to revise the title and ballot title and submission clause.

## APPENDIX

Proposed Initiative Amendment to the Colorado Revised Statutes.

Be it enacted by the people of the State of Colorado: Title 12, Colorado Revised Statues is amended by the addition of Article 37.5, to read:

12–37.5–101. SHORT TITLE. This article shall be known and may be cited as the "Colorado Parental Notification Act."

12–37.5–102. LEGISLATIVE DECLARATION. The people of the State of Colorado, pursuant to the powers reserved to them in Article V of the Constitution of the

---

5. In *In re Proposed Initiated Constitutional Amendment of Education,* 682 P.2d 480 (Colo. 1984), we held that certain phrases must be added to the title and ballot title and submission clause, in order for these documents to fairly

reflect the contents of the proposed amendment. Similarly, in *Cook v. Baker,* 121 Colo. 187, 194, 214 P.2d 787, 791 (1950), we noted that it is our responsibility to "remand with instructions, pointing out where said board is in error."

State of Colorado, declare that family life and the preservation of the traditional family unit are of vital importance to the continuation of an orderly society; that the right of parents to rear and nurture their children during their formative years and to be involved in all decisions of importance affecting such minor children should be protected and encouraged, especially as such parental involvement relates to the pregnancy of an unemancipated minor child, recognizing that the decision by any such child to submit to a procured abortion may have adverse long-term consequences for her.

Recognizing that agencies of government have been usurping parental rights and that the Colorado General Assembly has proven itself impotent in responding to this erosion of the parent-child relationship, and recognizing further that the United States Supreme Court has presumed to deny legal personhood to all unborn children and has additionally relegated parents of minor girls to a second-class status behind nurses, counselors, physicians and other third parties who, in unrestrained fashion, encourage, counsel and promote improvident decisions by a minor child to abort her offspring, and has allowed only those State laws which provide but limited and voidable parental involvement, and that even this limited involvement has been denied to the parents in this State by the inaction of the Colorado General Assembly; therefore,

The people of the State of Colorado, being mindful of the limitations imposed upon them at the present time by the Federal judiciary in the preservation of the parent-child relationship, hereby enact into law the following provisions.

12–37.5–103. DEFINITIONS. As used in this article, unless the context otherwise requires:

(1) "Minor Child" means a person under eighteen years of age.

(2) "Parent" means the natural or adoptive mother and father of the minor child who is pregnant, if they are both living; one parent of the minor child if only one is living, or if the other parent cannot be served with notice, as hereinafter provided; or the Court-appointed guardian of such minor child if she has one or any foster parent to whom the care and custody of such minor child shall have been assigned by any agency of the State or county making such placement.

(3) For purposes of this article, "abortion" means a procured abortion, whether or not payment is involved, by the use of any means to terminate the pregnancy with knowledge that the termination by those means will, with reasonable likelihood, cause the death of the minor child's unborn offspring at any time after fertilization.

12–37.5–104. NOTIFICATION CONCERNING ABORTION

(1) No procured abortion shall be performed upon an unemancipated minor child until at least 48 hours after written notice of the pending procured abortion has been delivered in the following manner:

(a) The notice shall be addressed to the parent at the dwelling house or usual place of abode of the parent. Such notice shall be delivered to the parent by:

(I) The attending physician or member of the physician's immediate staff who is over the age of eighteen, or

(II) By the sheriff of the county where the service of notice is made, or by his deputy, or

(III) By any other person over the age of eighteen years who is not related to the minor child.

(b) Notice delivered by any person other than the attending physician shall be furnished to and delivered by such person in a sealed envelope marked "Personal and Confidential" and its content shall not in any manner be revealed to the person making such delivery.

(c) Whenever the parent of the minor child includes two persons to be notified as provided in this article, and such persons reside at the same dwelling house or place of abode, delivery to one such person shall constitute delivery to both, and the 48–hour period shall commence when delivery is made. Should such persons not reside together and delivery of notice can be made

to each of them, notice shall be delivered to both parents, unless the minor child shall request that only one parent be notified, which request shall be honored and shall be noted by the physician in the minor child's medical record. Whenever the parties are separately served with notice, the 48–hour period shall commence upon delivery of the first notice.

(d) The person delivering such notice, if other than the physician, shall provide to the physician a written return of service at the earliest practical time, as follows:

(I) If served by the sheriff or his deputy, by his certificate with a statement as to date, place and manner of service and the time such delivery was made.

(II) If by any other person, by his affidavit thereof with the same statement.

(III) Return of service shall be maintained by the physician.

(e) (I) In lieu of personal delivery of the notice, the same may be sent by postpaid certified mail, addressed to the parent at the usual place of abode of the parent, with return receipt requested and delivery restricted to the addressee. Delivery shall be conclusively presumed to occur and the 48–hour time period as provided in this article shall commence to run at 12:00 o'clock noon on the next day on which regular mail delivery takes place.

(II) Whenever the parent of the minor child includes two persons to be notified as provided in this article and such persons reside at the same dwelling house or place of abode, notice addressed to one parent and mailed as provided in the foregoing subparagraph shall be deemed to be delivery of notice to both such persons. Should such persons not reside together and notice can be mailed to each of them, such notice shall be separately mailed to both parents unless the minor child shall request that only one parent shall be notified, which request shall be honored and shall be noted by the physician in the minor child's medical record.

(III) Proof of mailing and the delivery or attempted delivery shall be maintained by the physician.

12–37.5–105. NO NOTICE REQUIRED —WHEN. No notice shall be required pursuant to this article if:

(1) The person or persons who are entitled to notice certify in writing that they have been notified.

(2) The pregnant minor child declares that she is a victim of child abuse or neglect as defined and provided in the "Child Protection Act of 1975," as contained in Title 19, Article 10 of the Colorado Revised Statues [sic], and any amendments thereto, and the attending physician has reported such child abuse or neglect as required by the said Child Protection Act.

12–37.5–106. PENALTIES—DAMAGES —DEFENSES.

(1) Any person who performs or attempts to perform an abortion in willful violation of this article:

(a) Commits a Class 1 misdemeanor and shall be punished as provided in Section 18–1–106 C.R.S.

(b) Shall be liable for damages proximately caused thereby.

(2) It shall be an affirmative defense to any criminal or civil proceedings if the person establishes that:

(a) The person relied upon facts or information sufficient to convince a reasonable, careful and prudent person that the representations of the pregnant minor regarding information necessary to comply with this article were bona fide and true, or

(b) The person had attempted with reasonable diligence to deliver or cause delivery of the required notice, but was unable to accomplish such delivery, or

(c) The abortion was performed to prevent the imminent death of the minor child and there was insufficient time to provide the required notice.

(3) Any person who counsels, advises, encourages or conspires to induce or persuade any pregnant minor child to furnish any physician with false information, whether oral or written, concerning the

minor child's age, marital status, or any other fact or circumstance to induce or attempt to induce the physician to perform an abortion upon such minor child without providing notice as required by this article commits a Class 5 felony and shall be punished as provided in 18–1–105 C.R.S.

12–37.5–107. JUDICIAL BYPASS— WHEN OPERATIVE.

(1) If Section 104 of this article is ever temporarily, preliminarily or permanently restrained or enjoined due to the absence of a judicial bypass provision, the said section shall be enforced as though the following provisions were incorporated as subsection (2) of Section 104, provided however that if any such restraining order or injunction is stayed, dissolved or otherwise ceases to have effect, Section 104 shall have full force and effect without the addition of the following subsection (2):

(2) (a) If any pregnant minor child elects not to allow the notification of any parent, any judge of a court of competent jurisdiction may, upon petition filed by or on behalf of such minor child enter an order dispensing with the notice requirements of this article if the Judge determines that the giving of such notice will not be in the best interest of the minor. Any such order shall include specific factual findings and legal conclusions in support thereof and a certified copy of such order shall be provided to the attending physician of said minor child and the provisions of Section 104(1) and Section 106 shall not apply to the physician with respect to such minor child.

(b) The court, in its discretion, may appoint a guardian ad litem for the minor child and also an attorney if said minor child is not represented by counsel.

(c) All court proceedings herein shall be confidential and shall be given preference over other pending matters, so that the court may reach a decision without undue delay.

(d) An expedited confidential appeal shall be available to any such minor child for whom the court denies an order dispensing with notification as required by this article.

Upon the minor child's representation as contained in her petition, or otherwise, that no funds are available to her for payment of filing fees, no filing fees shall be required in either the trial court or appellate court.

12–37.5–108. LIMITATIONS.

(1) This article shall in no way be construed so as to:

(a) Require any minor child to submit to an abortion, or

(b) Prevent any minor child from withdrawing her consent previously given to have an abortion, or

(b)[sic] Permit anything less than fully informed consent before submitting to an abortion.

(2) This article shall in no way be construed as either ratifying, granting or otherwise establishing an abortion right for minor children independently of any other regulation, statute or court decision which may now or hereafter limit or abridge access to abortion by minor children.

12–37.5–109. SEVERABILITY. If any provision, word, phrase or clause of this act or the application thereof to any person or circumstances shall be held invalid, such invalidity shall not affect the provisions, words, phrases, clauses or application of this section which can be given effect without the invalid provision, word, phrase, clause, or application, and to this end, the provisions, words, phrases, and clauses of this act are declared to be severable.