**In the Matter of the Title, Ballot Title and Submission Clause Approved February 14, 1992, with regard to the PROPOSED INITIATED CONSTITUTIONAL AMENDMENT CONCERNING LIMITED GAMING IN the TOWN OF BURLINGTON, Evans, Lamar, Las Animas, Sterling, Antonito, Garden City, Granada, Holly, Julesburg, Milliken, Ovid, Peetz and Sedgwick, and the Counties of Logan, Prowers and Sedgwick (Limited Gaming III), and the Motion for Rehearing Denied on February 28, 1992.**

**James E. Klodzinski and Charles R. Sarner, Petitioners,**

**and**

**Paul Nielsen and Jerry Haynes, Respondents,**

**and**

**Ray Slaughter, Doug Brown and Natalie Meyer, Title Setting Board.**

**No. 92SA98.**

Supreme Court of Colorado,
En Banc.

June 1, 1992.

Charles R. Sarner, pro se.

James E. Klodzinski, Trinidad, for petitioners.

Berry & Singer, John Berry, Denver, for respondents.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Denver, for Title Setting Bd.

Justice ERICKSON delivered the Opinion of the Court.

James E. Klodzinski and Charles R. Sarner, registered electors (petitioners), pursuant to section 1–40–102(3)(a), 1B C.R.S. (1991 Supp.), seek review of the validity of the title, submission clause,[1] and summary set by the Initiative Title Setting Board (Board)[2] for a proposed amendment to the Colorado Constitution concerning limited gaming. The petitioners assert that the title, submission clause, and summary set by the Board do not reflect the true intent and meaning of the proposed Initiative and petitioned for a rehearing. The Board held a hearing and considered the substance of petitioners' motion to amend the language set by the Board. The petitioners' proposed amendments to the title, submission clause and summary were not accepted and the petitioners' motion for rehearing was, therefore, denied. We affirm.

## I

The Board conducted the public meeting required by section 1–40–101(2) and it set the title, submission clause, and summary for an initiated constitutional amendment (Initiative) to articles IX and XVIII of the Colorado Constitution. The Initiative would extend limited gaming to several Colorado cities, towns, and counties, and would add to games of chance that may be conducted where limited gaming is permitted. In addition, the Initiative would allow the general assembly to increase the maximum single bet above the present limit, and would change the gaming tax revenue allocation from the general fund to the public school fund. The text of the Initiative is included as an appendix to this opinion. Petitioners contested the validity of the title, submission clause, and summary fixed by the Board and filed a motion for rehearing under section 1–40–102(3)(a), 1B C.R.S. (1991 Supp.).[3] The Board heard the petition for rehearing on February 28, 1992, and the proposal for amendment of the language of the title, submission clause, and summary, and denied the motion. Pursuant to section 1–40–102(3)(a), review is sought in this court.

## II

The question is whether the language set by the Board for the title, submission clause, and summary fairly and correctly expresses the true intent and meaning of the Initiative and adequately informs sign-

1. The Title Board referred to the ballot title and submission clause as a single unit. This opinion will refer to the ballot title and submission clause as the "submission clause."

2. The Board consists of the secretary of state, the attorney general, and the director of the office of legislative legal services or the director's designee. See § 1–40–101(2), 1B C.R.S. (1991 Supp.).

3. Section 1–40–102(3)(a) provides:

 Any registered elector ... who is not satisfied with the titles, summary, and submission clause thus provided and claims them to be unfair or that they do not clearly express the true meaning and intent of the proposed law or constitutional amendment ... may file a motion with the secretary of state for a rehearing.... If overruled, a certified copy of said petition with the titles, summary, and submission clause of such proposed law or constitutional amendment, together with a certified copy of such motion for rehearing and of the ruling thereon, shall be furnished upon request by the secretary of state to the elector filing such motion and ... if filed with the clerk of the Colorado supreme court within five days thereafter shall be docketed as a cause there pending....

 § 1–40–102(3)(a), 1B C.R.S. (1991 Supp.).

ers of petitions and voters of its effects.[4] We answer the question in the affirmative.

The title, submission clause, and summary at issue provide:

### Title

AN AMENDMENT TO ARTICLE XVIII OF THE COLORADO CONSTITUTION TO PERMIT LIMITED GAMING, SUBJECT TO AN AFFIRMATIVE LOCAL VOTE, ′.⸴ THE CITIES AND TOWNS OF BURLINGTON, EVANS, LAMAR, LAS ANIMAS, STERLING, ANTONITO, GARDEN CITY, GRANADA, HOLLY, JULESBURG, MILLIKEN, OVID, PEETZ, AND SEDGWICK AND THE COUNTIES OF LOGAN, PROWERS, AND SEDGWICK; TO ADD TO THE TYPES OF GAMES WHICH MAY BE CONDUCTED WHERE LIMITED GAMING IS PERMITTED; TO ALLOW THE GENERAL ASSEMBLY TO INCREASE THE MAXIMUM SINGLE BET ABOVE THE PRESENT FIVE-DOLLAR LIMIT; TO ALLOCATE TAX REVENUES DERIVED FROM LIMITED GAMING ACTIVITIES; AND TO CHANGE THE TAX REVENUE ALLOCATION FROM THE GENERAL FUND TO THE PUBLIC SCHOOL FUND IF THE GENERAL ASSEMBLY CONTINUES SCHOOL FUNDING AT NO LESS THAN THE LEVEL ESTABLISHED AT THE 1992 LEGISLATIVE SESSION.

### Submission Clause

SHALL THERE BE AN AMENDMENT TO ARTICLE XVIII OF THE COLORADO CONSTITUTION TO PERMIT LIMITED GAMING, SUBJECT TO AN AFFIRMATIVE LOCAL VOTE, IN THE CITIES AND TOWNS OF BURLINGTON, EVANS, LAMAR, LAS ANIMAS, STERLING, ANTONITO, GARDEN CITY, GRANADA, HOLLY, JULESBURG, MILLIKEN, OVID, PEETZ, AND SEDGWICK AND THE COUNTIES OF LOGAN, PROWERS, AND SEDGWICK; TO ADD TO THE TYPES OF GAMES WHICH MAY BE CONDUCTED WHERE LIMITED GAMING IS PERMITTED; TO ALLOW THE GENERAL ASSEMBLY TO INCREASE THE MAXIMUM SINGLE BET ABOVE THE PRESENT FIVE-DOLLAR LIMIT; TO ALLOCATE TAX REVENUES DERIVED FROM LIMITED GAMING ACTIVITIES; AND TO CHANGE THE TAX REVENUE ALLOCATION FROM THE GENERAL FUND TO THE PUBLIC SCHOOL FUND IF THE GENERAL ASSEMBLY CONTINUES SCHOOL FUNDING AT NO LESS THAN THE LEVEL ESTABLISHED AT THE 1992 LEGISLATIVE SESSION?

### Summary

This measure authorizes limited gaming in the cities and towns of Burlington, Evans, Lamar, Las Animas, Sterling, Antonito, Garden City, Granada, Holly, Julesburg, Milliken, Ovid, Peetz and Sedgwick and the Counties of Logan, Prowers, and Sedgwick upon the approval of the electorates of such cities, towns and counties at special elections to be called by March 1, 1993, and set and conducted within thirty to ninety days of the call. All gaming under this measure is subject to regulation by the Colorado limited gaming control commission subject to licensing pursuant to local ordinances and subject to enabling legislation to be in place by May 1, 1993. The measure allows the General Assembly to increase the maximum single bet above the present five-dollar limit. The measure requires that gaming activities be confined to areas designated by local ordinances and within those areas, to structures, conforming to applicable local ordinances. It prohibits gaming between the hours of 2 a.m. and 8 a.m. The measure adds big 6 wheel to the limited gaming activities which may be conducted in all communities where limited gaming is permitted, including Central City, Black Hawk, and Cripple Creek. The measure

---

**4.** Separate briefs were filed by Klodzinski and Sarner. We will refer to them jointly as petitioners and address their claims together.

also specifies how gaming tax revenues shall be spent, with fifty percent of the revenues generated from all limited gaming activity and 75% of the revenues generated from gaming in the above-named locations allocated to the state public school fund so long as the general assembly continues to appropriate money to the schools at levels at least equal to the level of funding established at the 1992 legislative session.

Limited gaming in the specified additional cities, towns, and counties and the authorization of additional games are expected to increase revenues to state and local governments. However state and local governments are expected to incur increased costs of administration, law enforcement, roads, infrastructure, and special elections required as a result of this measure. The amounts of these revenues and costs are indeterminate. In addition the revenues to the state public school fund will be increased while the general fund revenues will decrease.

## III

The people's constitutional right to initiate legislation and constitutional amendments is granted by article V, section 1(2) of the Colorado Constitution. The statutory scheme calls for the Board to designate and fix a title, submission clause, and a summary for Initiative petitions before they are signed by electors. *See* § 1–40–101(1), (2), 1B C.R.S. (1991 Supp.). "The purpose of the title setting process is to ensure that both persons reviewing an Initiative petition and the voters are fairly and succinctly advised of the import of the proposed law." *In re Proposed Initiative on Education Tax Refund*, 823 P.2d 1353, 1355 (Colo.1991) (hereinafter *Education Tax Refund Initiative*); *Dye v. Baker*, 143 Colo. 458, 460, 354 P.2d 498, 500 (1960).

■ In performing its statutory duty, the Board is not required to describe every feature of a proposed measure. *In re Proposed Initiated Constitutional Amendment Concerning Limited Gaming in Manitou Springs, Fairplay and in Airports*, 826 P.2d 1241, 1244 (Colo.1992); *Education Tax Refund Initiative*, 823 P.2d at 1355; *In re Proposed Initiative Concerning "State Personnel System"*, 691 P.2d 1121, 1124 (Colo.1984) (hereinafter *"State Personnel System" Initiative*). Nevertheless, the Board must consider "the public confusion that might be caused by misleading titles." § 1–40–101(2), 1B C.R.S. (1991 Supp.). The title must correctly and fairly express the true meaning of the proposed measure, and the submission clause set by the Board should be brief and should "unambiguously state the principle of the provision sought to be added, amended, or repealed." *Id.* Similarly, the designated summary should be impartial and not an argument likely to create prejudice, either for or against the measure. *Id.*

■ In reviewing the Board's title setting process we: (1) should not address the merit of the proposed Initiative and should not interpret the meaning of proposed language or suggest how it will be applied if adopted by the electorate; (2) should resolve all legitimate presumptions in favor of the Board; and (3) will not interfere with the Board's choice of language if the language is not clearly misleading. *Education Tax Refund Initiative*, 823 P.2d at 1355; *In re Proposed Initiative on Parental Notification of Abortions for Minors*, 794 P.2d 238, 240 (Colo.1990) (hereinafter *Parental Notification of Abortions for Minors*). "Our duty is to ensure that the title, submission clause and summary fairly reflect the proposed Initiative...." *Education Tax Refund Initiative*, 823 P.2d at 1355. Petition signers and voters should not be misled into support "for or against a proposition by reason of the words employed." *Dye v. Baker*, 143 Colo. at 460, 354 P.2d at 500.

## IV

■ The petitioners claim that the Initiative adopts a new standard of zoning and structural restrictions for limited gaming and that the title, submission clause, and summary set by the Board do not adequately inform petition signers and voters of that standard. The proposed Initiative requires that gaming activities be confined

to areas designated by local ordinances and, within those areas, to structures conforming to applicable local ordinances. Where limited gaming is currently permitted, the constitution restricts gaming establishments to commercial districts, and confines their activities, size, percentage of space used for gaming, and architecture. *See* Colo.Const. art. XVIII, § 9, 1A C.R.S. (1991 Supp.). The petitioners contend that these mandated constitutional restrictions are associated in the minds of voters with limited gaming. Since the proposed Initiative also utilizes the term "limited gaming," the petitioners argue that a new standard of zoning and structural restrictions is contained therein. Based on *Parental Notification of Abortions for Minors,* 794 P.2d 238 (Colo.1990), the petitioners claim that the voters are entitled to know of the new standard and the fact that it does not apply to cities where limited gaming is currently permitted. We find no merit in the petitioners' claim. In *Parental Notification of Abortions for Minors,* the initiative required that parents of minors seeking abortions be notified and abortion was defined as "termination of pregnancy by caus[ing] the death of the minor child's unborn offspring at any time after fertilization." *Id.* at 242. Since the proposed statutory definition of abortion was not included in the title and submission clause, we held that the title and submission clause fixed by the Board was not a fair reflection of the contents of the initiative and required that the definition be included in the title and submission clause. *Id.* Finding that the legal status of the fetus was central to the abortion debate and that "neither Colorado statute nor common law had addressed the issue of when life begins," we held that the initiative adopted a legal standard that was new and likely to be controverted.

Here, the Initiative proposes no legal standard for zoning or structural restrictions for gaming establishments. *See In re Limited Gaming in the Town of Parachute,* 831 P.2d 457, 460 (Colo.1992). The Initiative regulates and confines gaming activities to areas and structures designated by the ordinances of municipalities voting to permit limited gaming. The Initiative's central feature is whether the named municipalities want to permit limited gaming and not where authorized gaming establishments would be located. Thus, the title and the submission clause fairly and accurately reflect that the Initiative would amend article XVIII of the Constitution to extend limited gaming to the localities named therein.

The petitioners also contend that neither the title nor the submission clause reflect that the Initiative will amend sections 9(4)(b) and 9(5)(b)(II) of article XVIII of the Colorado Constitution and be applicable to areas where limited gaming is currently permitted. The respondents argue that this claim should not be considered by the court because it is raised, with respect to the title and submission clause, for the first time on appeal. We find that the claim was properly raised in petitioners' motion for rehearing and we consider it below.

Section 9(4)(b) defines limited gaming and section 9(5)(b)(II) governs the distribution of gaming tax revenues. Colo.Const. art. XVIII, §§ 9(4)(b), 9(5)(b)(II), 1A C.R.S. (1991 Supp.). Contrary to petitioners' argument, the title and the submission clause clearly signal a proposed change in the scope of limited gaming that will apply to all areas where limited gaming is permitted. Both the title and submission clause include the phrase "TO ADD TO THE TYPES OF GAMES WHICH MAY BE CONDUCTED WHERE LIMITED GAMING IS PERMITTED." Similarly, the Board designated language "[T]O CHANGE THE TAX REVENUE ALLOCATION FROM THE GENERAL FUND TO THE PUBLIC SCHOOL FUND" presumptively refers to the proposed amendment of section 9(5)(b)(II) and the presumption must be resolved in favor of the Board. *See Education Tax Refund Initiative,* 823 P.2d at 1355. The Board is not required to state that the change in gaming tax revenue allocation will affect all areas where gaming is permitted or to state the effect the Initiative will have on other constitu-

tional provisions.[5] *See In re Proposed Constitutional Amendment Under the Designation "Pregnancy",* 757 P.2d 132, 136 (Colo.1988); *"State Personnel System Initiative",* 691 P.2d at 1125.

The central features of the Initiative are the extension of limited gaming, reallocation of gaming tax revenues, addition of authorized games where limited gaming is permitted, and authorization for the General Assembly to increase the betting limit in gaming establishments. The title, submission clause, and summary set by the Board fairly and accurately reflect those features.

### V

█ Finally, respondents have requested an award of attorney fees and costs pursuant to section 13–17–102, 6A C.R.S. (1987). Respondents allege that this appeal lacks justification and was interposed for the sole purpose of delay. Section 1–40–102(3)(a), 1B C.R.S. (1991 Supp.), grants any registered elector, who claims that the title, submission clause, and summary set by the Board is not a fair reflection of the initiative, the right to file a motion for rehearing with the Board and, if overruled by the Board, to obtain review in this court. The petitioners are registered electors and the challenge is not frivolous. We decline under the facts of this case to award attorney fees and costs to the respondents.

Accordingly, we affirm the ruling of the Board.

### APPENDIX A

SECTION 1. Amend section 5 of article IX of the Constitution, to read:

ARTICLE IX. **Section 5. Of what school fund consists.** The public school fund of the state shall consist of the proceeds of such land as have heretofore been, or may hereafter, be granted to the state by the general government for educational purposes; all estates that may escheat to the state; TAX REVENUES FROM LIMITED GAMING AS SPECIFIED IN SECTIONS 9

AND 10 OF ARTICLE XVIII OF THIS CONSTITUTION; also all other grants, gifts or devises that may be made to this state for educational purpose.

SECTION 2. Amend section 9 of article XVIII of the Constitution, to read:

ARTICLE XVIII. **Section 9. Limited gaming permitted.**

(4)(b) "Limited gaming" means the use of slot machines, BIG 6 WHEELS, and the card games of blackjack and poker, each game having a maximum single bet of five dollars UNLESS OTHERWISE INCREASED BY THE GENERAL ASSEMBLY.

(5)(b)(II) At the end of each state fiscal year, the state treasurer shall distribute the balance remaining in the limited gaming fund, except for an amount equal to all expenses of the administration of this section 9 for the preceding two-month period, according to the following guidelines: FOR TAX REVENUES DERIVED FROM ALL LIMITED GAMING AND ANY INTEREST ATTRIBUTABLE THERETO fifty percent shall be transferred to the ~~general fund or such other fund as the general assembly shall provide~~ PUBLIC SCHOOL FUND CREATED IN ARTICLE IX OF THIS CONSTITUTION FOR ELEMENTARY AND SECONDARY EDUCATION. THESE FUNDS SHALL BE IN ADDITION TO FUNDS APPROPRIATED BY THE GENERAL ASSEMBLY FROM OTHER SOURCES FOR ELEMENTARY AND SECONDARY EDUCATION AND SHALL ONLY BE AVAILABLE TO FUND ELEMENTARY AND SECONDARY EDUCATION IF THE GENERAL ASSEMBLY FUNDS ELEMENTARY AND SECONDARY EDUCATION FROM SUCH OTHER SOURCES IN AN AMOUNT WHICH IS AT LEAST EQUAL TO THE APPROPRIATION FOR ELEMENTARY AND SECONDARY EDUCATION IN THE 1992 LEGISLATIVE SESSION TAKING INTO CONSIDERATION INFLATION AND ANY INCREASE IN THE NUMBER OF STUDENTS ATTENDING PUBLIC

---

**5.** The Initiative will also amend article IX, § 5 of the Colorado Constitution which defines the

public school fund.

SCHOOLS. Twenty-eight percent shall be transferred to the state historical fund, which fund is hereby created in the state treasury; twelve percent shall be distributed to the governing bodies of Gilpin county and Teller county in proportion to the gaming revenues generated in each county; the remaining ten percent shall be distributed to the governing bodies of the cities of: the City of Central, the City of Black Hawk, and the City of Cripple Creek in proportion to the gaming revenues generated in each respective city.

SECTION 3. Amend article XVIII of the constitution, BY THE ADDITION OF A NEW SECTION, to read:

ARTICLE XVIII. **Section 10. Additional limited gaming permitted—majority vote of people—cities, towns, and counties identified.** (1) ANY PROVISIONS OF SECTION 2 OF THIS ARTICLE OR ANY OTHER PROVISIONS OF THIS CONSTITUTION TO THE CONTRARY NOTWITHSTANDING, LIMITED GAMING SHALL BE LAWFUL UPON A MAJORITY VOTE OF THE PEOPLE LIVING WITHIN THE BOUNDARIES OF THE FOLLOWING EXISTING CITIES, TOWNS, OR COUNTIES: THE CITIES OF BURLINGTON, EVANS, LAMAR, LAS ANIMAS, AND STERLING, THE TOWNS OF ANTONITO, GARDEN CITY, GRANADA, HOLLY, JULESBURG, OVID, MILLIKEN, PEETZ, AND SEDGWICK; AND THE COUNTIES OF LOGAN, PROWERS, AND SEDGWICK.

(2) THERE SHALL BE ONE SPECIAL ELECTION CALLED BY EACH SUCH CITY, TOWN, OR COUNTY FOR THE PURPOSE OF DETERMINING WHETHER LIMITED GAMING SHALL BE PERMITTED WITHIN THE BOUNDARIES OF SUCH CITY, TOWN OR COUNTY. THE PASSAGE OR DEFEAT OF LIMITED GAMING WITHIN SUCH CITY, TOWN, OR COUNTY SHALL ONLY BE BINDING WITHIN THE BOUNDARIES OF SUCH CITY OR TOWN OR THE UNINCORPORATED AREA OF SUCH COUNTY. EACH SUCH SPECIAL ELECTION SHALL BE CALLED BY MARCH 1, 1993. EACH SPECIAL ELECTION IN EACH SUCH CITY, TOWN, OR COUNTY SHALL BE SET AND CONDUCTED NO SOONER THAN THIRTY NOR LATER THAN NINETY DAYS FROM THE DATE OF THE CALLING OF SUCH SPECIAL ELECTION. THE EXPENSE FOR THE SPECIAL ELECTION FOR THE PURPOSE OF PERMITTING LIMITED GAMING WITHIN THE BOUNDARIES OF A CITY, TOWN, OR COUNTY SHALL BE PAID FOR BY MONIES FROM THE GENERAL FUND OF THE GOVERNING BODIES OF EACH CITY, TOWN, OR COUNTY REQUIRED TO HOLD SUCH SPECIAL ELECTION. THE SPECIAL ELECTION REQUIRED BY THIS SECTION 10 MAY BE HELD AT SUCH TIME AND PLACE AS OTHER LAWFUL ELECTIONS IF SUCH OTHER LAWFUL ELECTION OTHERWISE OCCURS WITHIN THE TIME PERIOD REQUIRED BY THIS SECTION 10. IF THE MAJORITY OF A CITY, TOWN, OR COUNTY VOTE IN FAVOR OF LIMITED GAMING, LIMITED GAMING SHALL BE PERMITTED WITHIN THE JURISDICTION OF SUCH CITY, TOWN, OR COUNTY NO LATER THAN OCTOBER 1, 1993.

(3) UPON A MAJORITY VOTE OF THE PEOPLE IN THE FOLLOWING EXISTING COLORADO CITIES, TOWNS, OR COUNTIES, LIMITED GAMING SHALL TAKE PLACE: THE CITY OF BURLINGTON, COUNTY OF KIT CARSON; THE CITY OF EVANS, COUNTY OF WELD; THE CITY OF LAMAR, COUNTY OF PROWERS; THE CITY OF LAS ANIMAS, COUNTY OF BENT; THE CITY OF STERLING, COUNTY OF LOGAN; THE TOWN OF ANTONITO, COUNTY OF CONEJOS; THE TOWN OF GARDEN CITY, COUNTY OF WELD; THE TOWN OF GRANADA, COUNTY OF PROWERS; THE TOWN OF HOLLY, COUNTY OF PROWERS; THE TOWN OF JULESBURG, COUNTY OF SEDGWICK; THE TOWN OF MILLIKEN, COUNTY OF WELD; THE TOWN OF OVID, COUNTY OF SEDGWICK; THE TOWN OF PEETZ, COUNTY OF LOGAN; THE TOWN OF SEDGWICK, COUNTY OF SEDGWICK;

AND THE COUNTIES OF LOGAN, PROWERS, AND SEDGWICK.

(4) LIMITED GAMING PERMITTED PURSUANT TO THIS SECTION 10 SHALL ONLY BE CONDUCTED IN STRUCTURES WHICH CONFORM TO THE ORDINANCES OF THE CITY, TOWN, OR COUNTY WHICH HAS PERMITTED SUCH LIMITED GAMING. THE AMOUNT OF SQUARE FOOTAGE ANY BUILDING AND THE PERCENTAGE OF ANY ONE FLOOR IN SUCH BUILDING WHICH MAY BE USED FOR LIMITED GAMING SHALL CONFORM TO THE ORDINANCES OF THE CITY, TOWN, OR COUNTY WHICH HAS PERMITTED SUCH LIMITED GAMING. LIMITED GAMING PERMITTED PURSUANT TO THIS SECTION 10 SHALL TAKE PLACE IN SUCH AREAS AS DESIGNATED BY ORDINANCE OF THE CITY, TOWN, OR COUNTY WHICH HAS PERMITTED SUCH LIMITED GAMING.

(5)(a) THE DEFINITIONS FOUND IN SECTION 9 OF THIS ARTICLE PERMITTING LIMITED GAMING SHALL APPLY TO THE PROVISIONS OF THIS SECTION. THE AMOUNT OF ADJUSTED GROSS PROCEEDS AND LICENSE FEES WHICH MAY BE PAID BY EACH LICENSEE TO THE STATE FOR THE PRIVILEGE OF CONDUCTING LIMITED GAMING PURSUANT TO THE PROVISIONS OF THIS SECTION 10 SHALL BE SUBJECT TO THE SAME LIMITATIONS ESTABLISHED IN SECTION 9 OF THIS ARTICLE.

(b) THE ADMINISTRATION AND REGULATIONS OF THIS SECTION 10 SHALL BE UNDER THE LIMITED GAMING CONTROL COMMISSION ESTABLISHED IN SECTION 9 OF THIS ARTICLE. A LICENSE FOR LIMITED GAMING PURSUANT TO THIS SECTION 10 SHALL BE OBTAINED PURSUANT TO ORDINANCES OF THE GOVERNING BODY OF THE CITY, TOWN, OR COUNTY WITHIN WHICH THE PROSPECTIVE LICENSEE WISHES TO OPERATE AND FROM THE LIMITED GAMING CONTROL COMMISSION.

(c) LIMITED GAMING PERMITTED PURSUANT TO THIS SECTION 10 SHALL BE PROHIBITED BETWEEN THE HOURS OF 2:00 O'CLOCK A.M. AND 8:00 O'CLOCK A.M.

(d) LIMITED GAMING MAY OCCUR IN ESTABLISHMENTS LICENSED TO SELL ALCOHOLIC BEVERAGES.

(6) TAX REVENUES FROM LIMITED GAMING PERMITTED PURSUANT TO THE PROVISIONS OF THIS SECTION 10 SHALL BE TRANSMITTED TO THE LIMITED GAMING FUND EACH MONTH. AT THE END OF EACH MONTH, THE STATE TREASURER SHALL DISTRIBUTE THE BALANCE REMAINING IN THE LIMITED GAMING FUND ATTRIBUTABLE TO TAX REVENUES FROM THIS SECTION 10 TOGETHER WITH ANY INTEREST ATTRIBUTABLE THERETO, EXCEPT FOR AN AMOUNT EQUAL TO ALL EXPENSES OF THE ADMINISTRATION OF THIS SECTION 10 FOR THE PRECEDING TWO–MONTH PERIOD, ACCORDING TO THE FOLLOWING: FIFTY PERCENT OF THE TAX REVENUES DERIVED FROM LIMITED GAMING PURSUANT TO THIS SECTION 10 SHALL BE TRANSFERRED TO THE PUBLIC SCHOOL FUND AS PROVIDED IN SECTION 9 OF THIS ARTICLE; TWENTY–FIVE PERCENT SHALL BE TRANSFERRED TO THE PUBLIC SCHOOL FUND CREATED IN ARTICLE IX OF THIS CONSTITUTION FOR ELEMENTARY AND SECONDARY EDUCATION SUBJECT TO THE LEVEL OF APPROPRIATION MADE BY THE GENERAL ASSEMBLY AS SPECIFIED IN SECTION 9 OF THIS ARTICLE; WHEN A CITY OR TOWN PERMITS LIMITED GAMING WITHIN ITS JURISDICTION AND THE COUNTY WITHIN WHICH SUCH CITY OR TOWN LIES HAS NOT APPROVED LIMITED GAMING, FIFTEEN PERCENT TO THE CITY OR TOWN AND TEN PERCENT TO THE COUNTY; WHEN A CITY OR TOWN AND THE COUNTY WITHIN WHICH SUCH CITY OR TOWN LIES PERMITS LIMITED GAMING WITHIN THEIR RESPECTIVE JURISDICTIONS, TEN PERCENT TO CITY OR TOWN AND FIF-

TEEN PERCENT TO THE COUNTY; AND IF THE COUNTY ONLY PERMITS LIMITED GAMING, TWENTY–FIVE PERCENT TO THE COUNTY. MONIES DISTRIBUTED TO CITIES, TOWNS, OR COUNTIES AS PROVIDED IN THIS SECTION SHALL BE IN PROPORTION TO THE GAMING REVENUES GENERATED IN EACH CITY, TOWN, AND COUNTY RESPECTIVELY.

(7) THE GENERAL ASSEMBLY SHALL ENACT, AMEND, OR REPEAL SUCH LAWS AS ARE NECESSARY TO IMPLEMENT THE PROVISIONS OF THIS SECTION 10, BY MAY 1, 1993.